**A.M.R. ENTERPRISES, INC., a Florida Corporation, Plaintiff-Appellant Cross Appellee,**

v.

**UNITED POSTAL SAVINGS ASSOCIATION, a Missouri Corporation, Defendant-Appellee Cross Appellant.**

**No. 76–1807.**

United States Court of Appeals, Fifth Circuit.

Feb. 15, 1978.

---

1. See, also, Lemon v. Bossier Parish School Board, 5 Cir. 1978, 556 F.2d 985.

Lawrence R. Metsch, Miami, Fla., for plaintiff-appellant cross appellee.

Allan M. Glaser, Marion E. Sibley, Miami Beach, Fla., for defendant-appellee cross appellant.

Before TUTTLE, CLARK and RONEY, Circuit Judges.

CHARLES CLARK, Circuit Judge:

A.M.R. Enterprises, Inc., is a Florida corporation that was formed to develop real estate. It hoped to construct condominiums

on a tract of land in Miami, Florida, which it purchased in July 1973. The land was encumbered with three mortgages in addition to the purchase money mortgage. In August 1973, AMR applied to National Title Insurance Company (NTIC), a Florida corporation, for a loan. Because NTIC did not make loans of this type, it contacted a mortgage broker which told NTIC that United Postal Savings Association might be interested in loaning money in Florida. United is a Missouri savings and loan institution. In December 1973, NTIC's vice president, John W. Hoover, Jr., wrote to United's president, Robert F. Gorman, to propose the terms of a loan. Gorman's response committed United to purchase a loan on certain terms. That response, which the parties denominate a commitment letter, was dated January 3, 1974.

AMR indicated its acceptance of the terms of the commitment letter by signing a copy of the letter and paying a commitment fee. In addition to payment of the fee, the commitment letter required AMR to meet certain conditions before United would advance any money. From AMR's viewpoint, the most critical condition was in paragraph 7:

> Provision of an A.L.T.A. policy of Title Insurance without exception. Coincident there with the execution of a construction loan and disbursing agreement providing for construction in accordance with plans and specifications and a guarantee of completion of the improvements.

AMR later executed a construction loan agreement prepared by NTIC to comply with paragraph 7. It named Chicago Title Insurance Company as the insurer of the title and the guarantor of completion of improvements. After AMR had signed the agreement, it was delivered to NTIC to be held in escrow pending AMR's procurement of the title insurance policy from Chicago Title. After AMR declared its inability to comply with Chicago Title's requirements, Chicago Title refused to write the policy. AMR attempted to obtain a policy from another title insurer but was unable to do so. On August 29, 1974, United wrote to Hoover and AMR to notify them that be-

cause of changed circumstances United was cancelling its commitment. Thereafter AMR lost the Miami property when it was sold at a foreclosure sale. AMR then sued United to recover the money it had advanced to United, its expenses in attempting to comply with the conditions of the commitment letter, and the cost of the property which it had lost.

The trial judge granted AMR's motion for summary judgment against United on the issue of liability. Following a non-jury trial on damages, the judge allowed AMR to recover only the money that it had paid to acquire the loan. In its appeal AMR contends that the judge erred in not allowing it to recover additional sums for out-of-pocket expenses and for loss of its property through mortgage foreclosure. We conclude that the district judge was correct in thus limiting AMR's recovery. United has cross-appealed the partial summary judgment against it. We conclude that because an unresolved issue of fact remains, the district judge erred in granting summary judgment. We therefore remand to the district court for a hearing on the relevant facts to determine if United breached the contract.

■ Our review of the granting of summary judgment is guided by the principle that summary judgment is appropriate only when no material issues of fact are in dispute. *See, e. g., Greenberg v. General Mills Fun Group, Inc.,* 478 F.2d 254, 256 (5th Cir. 1973); *Tyner v. Woodruff,* 206 So.2d 684, 687 (Fla.App.1968). Whether United breached its contract depends upon the duration of its commitment to have the money available for AMR. When it granted summary judgment against United the district court held that "[a]ccording to the terms of the letter of commitment United was obligated for a period of at least one year, to purchase, in a maximum amount of $890,-000, a construction loan to be secured by AMR." The district judge further interpreted the commitment letter as obligating United "to stand ready to perform for a period of at least one year. No time for

performance of the conditions by AMR was stated and thus a reasonable time must be inferred."

The district judge based those conclusions upon an erroneous interpretation of the commitment letter. United's commitment letter placed no time limitation upon its commitment to advance the funds.[1] The time limitations set out in the letter were upon the terms of the loans to which United was committing itself. "Phase one" was to be a "construction loan" with a maximum amount of $890,000. The "term" of that loan was "one (1) year with option to extend construction loan for one year upon payment of 1% of the original loan amount as a renewal fee." That the term was to be for the loan and not for the commitment is shown by three factors: (1) In the first

1. A.M.R. Enterprises, Inc.
 c/o Mr. John W. Hoover, Jr., Vice President
 151 S. W. 27th Avenue — P.O. Box 100
 Miami, Florida 33135

 Dear Mr. Hoover:
 This letter will commit United Postal Savings Association to purchase the following loans subject to terms and conditions as stated below:
 PHASE ONE—CONSTRUCTION LOAN
 1) Loan Amount: Maximum amount—$890,-000.00. The principal balance will not exceed 75% of sellout price subject to final plans and location of building on site. In no event will amount exceed $890,000.00.
 2) Term: One (1) year with option to extend construction loan for one year upon payment of 1% of the original loan amount as a renewal fee.
 3) Interest Rate: During construction period and any renewal period during construction, interest shall be computed at three per cent over prime rate as published by Chase Manhattan Bank, New York, New York, with a minimum chargeable interest rate of eleven per cent and a maximum chargeable interest rate of fifteen per cent. Mortgage note shall contain prepayment penalty of 3% of the principal amount of the note if prepaid prior to completion of construction by any method other than sale of individual condominium units.
 4) Location: 507 N. E. 30th Street, Miami, Florida.
 5) Closing Agent and Servicer: National Title Insurance Company, Miami, Florida. All loan documents to be approved by them.
 6) Borrower: A.M.R. Enterprises, Inc., Miami, Florida, with personal guarantee of the note by Mr. Benjamin Aruca, Mr. Martin Aruca and Mr. Rudolfo Laucirica and their spouses, if any. This commitment is not assignable.
 7) Provision of an A.L.T.A. policy of Title Insurance without exception. Coincident there with the execution of a construction loan and disbursing agreement providing for construction in accordance with plans and specifications and a guarantee of completion of the improvements.
 8) Provision for incorporating in the planned improvements the recommendations of Theodore W. Slack, M.A.I., made in his appraisal dated October 8, 1973 with particular reference to pages 9–12 of the appraisal.
 9) Execution and filing of appropriate declarations of condominiums to comply with Florida Condominium Law and in form satisfactory to National Title Insurance Company.
 10) All expenses in connection with the making of and closing of this loan shall be paid by borrower.
 11) Payment of a one per cent non-refundable commitment fee upon acceptance of the commitment for Phase One.
 12) Release of individual sold units to be in accordance with schedule to be agreed upon between A.M.R. Enterprises and United Postal Savings Association. Said agreement to be made prior to commencement of construction.
 United Postal Savings Association commits to make permanent loans on the individual units being constructed under the construction loan subject to the following:
 1) Commitment Amount: $900,000.00
 2) Maximum Term: 30 years
 3) Interest Rate: $8\frac{3}{4}\%$ net to United Postal Savings Association
 4) Price: 99% of par
 5) Maximum loan to value: 95%
 6) Credit packages to be submitted to United Postal Savings Association for prior approval.
 7) All loans to be insured by Mortgage Guaranty Insurance Corporation.
 8) All loans to be closed and delivered within 18 months.
 9) Payment of a one per cent non-refundable commitment fee upon acceptance of Phase Two of this commitment letter.
 If terms and conditions of the above commitment are satisfactory, please sign a copy of this letter and return it with the appropriate commitment fee.

 Very truly yours,

 /s/ Robert F. Gorman

 Robert F. Gorman
 President

sentence of the letter United States that it would purchase loans "subject to terms . . . stated below"; thus, what was to follow were the terms of the loan and not the terms of the commitment. (2) The term appeared in the second numbered paragraph under the rubric "PHASE ONE–CONSTRUCTION LOAN"; there was no indication that the term applied to anything other than the construction loan. (3) In the paragraph itself, the term of one year is followed by a reference to an option to extend the *construction loan* for an additional year; the explicit reference to an extension of the construction loan makes it clear that the extension would follow the one-year term mentioned earlier in the same sentence.

■ Our conclusion that the one-year term referred to the loan and not the duration of the commitment necessitates a second conclusion: The commitment letter did not expressly limit the duration of United's obligation. This is the unresolved issue of fact that made summary judgment inappropriate. When a contract contains no time limitation, courts will infer that the parties contemplated that performance occur within a reasonable time. *Gentry v. Smith*, 487 F.2d 571, 575 (5th Cir. 1973) (Florida law); *Doolittle v. Fruehauf Corporation*, 332 So.2d 107, 109–10 (Fla.App. 1976); *Tyner v. Woodruff*, 206 So.2d 684 (Fla.App.1968); *see also* Restatement (Second) of Contracts § 230 (Tent. Draft 1973); Restatement (First) of Contracts. § 46 (1932). On remand the district court should conduct further proceedings to determine what would have been a reasonable time for United to keep the loan available under the circumstances.[2] Such proceeding may include proof as to the usual practices in similar situations as well as what these parties may themselves have contemplated. *See Whiting v. Gray*, 27 Fla. 482, 8 So. 726, 727 (Fla.1891); *see also* 3 Corbin on Contracts § 553 (1960).

■ Our conclusion that summary judgment was inappropriate leaves United's lia-bility in doubt. Nevertheless, in the interest of judicial economy, we will also consider the other issue raised on this appeal: whether the district court erred in limiting AMR's recovery to the sums it had paid United to obtain the commitment and the sums it had paid to comply with the commitment.

■ The damages that are recoverable for breach of a contract "are those which would naturally result from the breach thereof, either as the ordinary consequences of such breach or as a consequence which may under the circumstances be presumed to have been contemplated by the parties to the contract as the probable result of its breach." *First National Insurance Agency, Inc., v. Leesburg Transfer & Storage, Inc.*, 139 So.2d 476, 482 (Fla.App.1962). *See also Travelers Indemnity Company v. Parkman*, 300 So.2d 284, 285 (Fla.App.1974).

■ The district court explained that it had denied recovery of money expended in connection with the mortgages on the property because those expenses were not "proper elements of damages as they were not proximately caused by United's breach of its contractual obligation, were not incurred in compliance with the terms of the commitment letter and further were not reasonably foreseeable by United or in contemplation of the parties at the time the contract was made." The district judge correctly concluded that the commitment letter completely stated the parties' agreement and that the terms of the contract could not be supplemented by parol evidence. Here the commitment letter indicated that United would purchase a "construction" loan. The interest rate was to apply "[d]uring construction period and any renewal period during construction." There was to be a prepayment penalty if the principal were paid prior to "completion of construction." In short, everything in the commitment letter indicated that the parties intended that the loan be for construction; nothing indicated any other pur-

---

2. In this case the court may find that reasonableness would require a notice by United before

cancellation that would allow AMR some subsequent period to achieve performance.

pose. Thus a court may infer that the parties contemplated only that the damages resulting from a breach would be related to construction: For example, AMR might have to pay a higher interest rate or might be unable to construct the building. Had AMR obtained another loan at a higher rate of interest, United would have been liable for the increased interest charge. *See* Restatement (First) of Contracts § 343 (1932). Because AMR did not obtain another loan, United was liable only to refund the sums paid to it by AMR and for all other sums paid by AMR toward construction of the building. Since there were no other consequences that were either foreseeable or contemplated, that was the extent of United's liability. *See id.*

█ United's argument that it cannot be liable for damages because AMR had not performed certain conditions precedent is misplaced. United obligated itself to hold a certain sum of money available for AMR. To secure that obligation AMR paid a fee to United. The conditions that United mentions were precedent not to the obligation to make the money available but to the disbursement of that money. AMR has not alleged that United wrongfully failed to disburse the money. Instead, AMR contends that United breached its obligation to keep the money available. If the district court determines that United cancelled its commitment before a reasonable time had expired, then United will be obligated to pay AMR the damages that the district court awarded in the first trial.

█ AMR contends that the district court should have admitted parol evidence on the subject of damages because the contract contained nothing about the measurement of damages. But AMR's attempt to show what the parties contemplated as damages is nothing more than an attempt to show that the parties contemplated something other than what was expressed in the contract. AMR proffered testimony to prove that the parties envisioned both a loan to repay the existing mortgages and a loan for construction. But it is just such a modification of the clear purport of the contractual language that the parol evidence rule was designed to prevent. *Cf. Ramey v. Koons*, 230 F.2d 802, 804–05 (5th Cir. 1956); *Sears v. James Talcott, Inc.*, 174 So.2d 776, 778 (Fla.D.Ct.App.1965). Here the contract unambiguously indicates that the purpose of the loan was for construction. In the absence of any ambiguity, parol evidence is not admissible to vary the terms of the contract. *Indemnity Insurance Company of North America v. Du Pont*, 292 F.2d 569, 574 (5th Cir. 1961) (Florida law). *See also Matthews v. Drew Chemical Corporation*, 475 F.2d 146, 149–50 (5th Cir. 1973); *Gulf Atlantic Towing Corporation v. Dickerson, Inc.*, 271 F.2d 542, 545–46 (5th Cir. 1959); *South Florida Lumber Mills v. Breuchaud*, 51 F.2d 490, 493–94 (5th Cir. 1931); *Airlift International, Inc. v. Boyd*, 280 So.2d 57, 59 (Fla.D.Ct.App.1973). No additional evidence is required to ascertain the intent of the parties. The district judge did not err in restricting the offer of proof. *See Hoopes v. Crane*, 56 Fla. 395, 47 So. 992, 993, 1000 (Fla.1908).

AMR also contends that NTIC acted as United's agent for this transaction. The result of that agency, according to AMR, is that United is chargeable with NTIC's knowledge of AMR's intent to use a part of the proceeds from the loan to pay its mortgages. At the close of the trial, the district judge announced his conclusion that NTIC was not acting as an agent for United. After examining the evidence introduced by AMR in an attempt to establish the agency relationship, we conclude this ruling was not clearly erroneous.

AFFIRMED IN PART, and IN PART VACATED AND REMANDED.