**COATS & CLARK, INC.,**
**Plaintiff-Appellee,**

v.

**Carlos G. GAY, Defendant-Appellant.**

**WHIRLPOOL CORPORATION,**
**Plaintiff-Appellee,**

v.

**Carlos GAY, Defendant-Appellant.**

**Nos. 84–8147, 84–8148.**

United States Court of Appeals,
Eleventh Circuit.

March 25, 1985.

J. Converse Bright, Valdosta, Ga., Charles F. Johnson, Thomasville, Ga., for defendant-appellant.

G. Terrell Davis, Atlanta, R. Dennis Withers, Atlanta, Ga., for plaintiff-appellee.

Before JOHNSON and CLARK, Circuit Judges, and LYNNE *, District Judge.

LYNNE, District Judge:

From judgments in favor of Coats & Clark, Inc. (Coats & Clark),[1] and in favor of Whirlpool Corporation (Whirlpool)[2] for damages to their goods stored in a warehouse operated by Carlos Gay (Gay), entered on a jury verdict in a consolidated trial, Gay brings this appeal.

The issues herein are briefly synopsized as follows:

1. Whether the trial court erred in granting partial summary judgment to

---

* Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Insurance Company of Pennsylvania, the insurer-subrogee of Coats & Clark, was added as a party plaintiff in 84–8147.

2. Arkwright-Boston Manufacturers Mutual Insurance Company, the insurer-subrogee of Whirlpool, was added as a party plaintiff in 84–8148.

Coats & Clark and dismissing Gay's counterclaim;

(2) Whether the trial court erroneously rejected as irrelevant proffered evidence of Coats & Clark's method of storage and caring for cotton in its Thomasville warehouse;

3. Whether the conduct of the trial judge deprived Gay of a fair trial by conveying to the jury an impression that he was antagonistic to Gay, and

(4) Whether there was an absence of evidence to support the verdict in favor of each plaintiff.

Applying the pertinent standard of review to each error assigned, and having conducted a painstaking examination of the ten volume record of a hotly contested, five day trial, we affirm.

Carlos Gay is the proprietor of General Bonded Warehouse in Thomasville, Georgia. He purchased the warehouse in 1972. On Sunday, March 14, 1982, the General Bonded Warehouse and its contents were destroyed by fire. Goods belonging to Coats & Clark and Whirlpool were damaged by the fire. The Coats & Clark property in the warehouse at the time of the fire was 2,750 bales of cotton that had a value of approximately $1,626,000. Coats & Clark salvaged cotton after the fire for a net of $8,941.80. The goods stored by Whirlpool were electrical appliances such as washers and refrigerators of the value of approximately $111,000. There was no salvage value of these goods as they were completely destroyed.

Coats & Clark delivered cotton to the warehouse and shipped cotton out of the warehouse with their own crews. Gay provided the forklift operator to bring the cotton from the storage area to the loading area of the warehouse. Coats & Clark's crews entered the warehouse to load and unload cotton and to sample cotton. They never objected to the method of stacking employed by Gay.

According to Gay, on Thursday before the fire a customer's truck struck the load-ing dock and a pipe that was part of the sprinkler system. The sprinkler system is a dry system in which the pipes are full of compressed air until the system is activated or unless a leak occurs, which reduces the pressure, allowing the system to flood. When Gay checked the system on Sunday morning March 14, 1982, the air pressure had fallen. He attempted to pump it up. When the air pressure seemed to be falling again, he closed the valves to turn off the system because he was afraid that if the system had a leak in it that it would flood the goods in storage and ruin them. Gay did not post a watchman nor did he inform the fire or police department [3] that he had turned off the sprinkler system. On the evening of March 14, 1982, a fire engulfed the building.

There was no contention by either plaintiff that Gay set the fire either intentionally or negligently or that he was responsible for its being set. Plaintiffs did contend that Gay was negligent in the manner in which the cotton was stored and stacked, in his maintenance of the sprinkler system, and in turning off the sprinkler system and failing to post a watchman or alert the police department. Plaintiffs' allegation was that Gay was negligent in not controlling, diminishing, delaying or avoiding the damage which was received in the fire.

Separate diversity actions were brought against Gay by Coats & Clark and Whirlpool, claiming damages to their cotton and appliances stored in General Bonded Warehouse as a proximate result of Gay's negligence. Each plaintiff insisted that Gay's negligence lay in the breach of his duty to exercise the degree of ordinary and reasonable care owed by a reasonably prudent warehouseman to protect property of which it was bailee.

In each case, Gay answered with a general denial of the allegations of the complaint. In addition, Gay asserted the affirmative defense of the contributory negligence of Coats & Clark. Gay also filed a counterclaim against Coats & Clark, con-

**3.** Gay testified that he left a note attached to the sprinkler room door with scotch tape to advise Hatcher, his manager, and the fire department, that the system had been turned off. Of course, this note left within a locked warehouse falls far short of notice to the fire department.

tending that its negligence was the proximate cause of the fire which destroyed his warehouse. The court below granted the motion for summary judgment filed in behalf of Coats & Clark and dismissed the counterclaim. The two cases were thereafter consolidated for trial.

Throughout the trial, each plaintiff contended that Gay was negligent in turning off the sprinkler system and thereafter in failing to post a watchman and to notify the fire department that the system had been deactivated.

The jury returned a verdict against Gay in favor of Coats & Clark in the amount of $803,281.32, plus 7 percent interest, and in favor of Whirlpool in the amount of $55,513.00, plus 7 percent interest. Following the entry of judgments on the verdicts and the denial of his motions for a new trial, Gay filed timely notices of appeal.

*Summary Judgment*

In his counterclaim, Gay sought recovery of damages to his warehouse and its contents, contending that such damages were proximately caused by the negligence of Coats & Clark. As explained in his deposition, his theory was that one or more of the bales of cotton delivered to his warehouse for Coats & Clark on or before February 18, 1982, possibly contained a latent ember, frequently referred to as a "hot bale", which smoldered until it erupted into flame on May 14.

The affidavits of Duane E. Baker, Oliver Dupree, Herbert Futch and Ed Canipelli were offered in support of the motion for summary judgment as to the counterclaim. In opposition Gay submitted the affidavit of James W. Donnelly, who identified himself as President of the Association of Consultant Engineers, Atlanta, Georgia, and as one with experience in the investigation and determination of the causes and origins of fires. It is that affidavit, and it alone, which Gay contends raises a genuine issue of material fact precluding dismissal of his counterclaim.

It is axiomatic that summary judgment is appropriate only when no genuine issues of fact are in dispute. *A.M.R. Enterprises, Inc. v. United Postal Savings Association*, 567 F.2d 1277, 1279 (5th Cir. 1978). In ruling upon such motions, it must be kept in mind that "[s]ummary judgment ... is not only an instrument of just, speedy and inexpensive resolution, but also a lethal weapon capable of overkill." *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123 (5th Cir.1978) (citations omitted). *See also Brunswick v. Vineberg*, 370 F.2d 605, 612 (5th Cir.1967). Particularly where a jury trial would be pretermitted, the court should proceed with caution in assessing the probative value of the evidence:

If decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved.... A trial on the merits would reveal no additional data.... The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.... But, where a jury is called for, the litigants are entitled to have the jury draw those inferences or conclusions that are appropriate grist for juries ... Juries must consider not only 'questions of fact in dispute, [but] questions of conflicting inferences from undisputed facts.' *Buffalo Insurance Co. v. Spach*, 5 Cir.1960, 277 F.2d 529, 531. 'Evidentiary facts, though undisputed, do not always conclusively establish the ultimate fact at issue. When the ultimate fact is to be inferred from evidentiary facts, the choice between permissible inferences is for the trier of facts.' *Walker v. U.S. Gypsum Co.*, 4th Cir.1959, 270 F.2d 857, 862, *cert. denied*, 1960, 363 U.S. 805 [80 S.Ct. 1240, 4 L.Ed.2d 1148]... Of course, if there is a *complete* absence of probative facts to support a particular inference, ... or, if the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at but one verdict, ... the court may bypass the jury .... Thus, where,

as here, the evidentiary facts are not disputed, a court in a non-jury case may grant summary judgment if trial would not enhance its ability to draw inferences and conclusions. But summary judgment is not appropriate if the same case is to be tried to a jury, and the inferences and conclusions to be drawn are genuinely disputed. To put it in another fashion, whether disputed issues are issues of 'fact' for purposes of Rule 56 depends not only on the state of the evidence and nature of the issue but hinges also on whether the litigants have a right to a jury determination.

*Nunez v. Superior Oil Co.*, 572 F.2d at 1123–24 (emphasis in original).

■ With these principles as guides, we evaluate the efficacy of the Donnelly affidavit to create a genuine issue of material fact. In support of its motion, Coats & Clark submitted the affidavit of Duane E. Baker, a qualified expert, who stated, "[i]t is my opinion that the fire at the General Bonded Warehouse did not occur as the result of a bale which was on fire at the time it arrived at the warehouse." In opposition to such motion, Gay submitted the affidavit of Donnelly, who stated: "It is further my opinion that a *potential cause* of this fire was a smoldering bale of cotton which smoldered for a period of time"; again, "It is my opinion that a fire packed bale from the ginning process shipped into the warehouse at that time or at a time near to February 18, 1982, *could have caused the fire* in this warehouse"; and again, "It is my opinion that a spark from a cut band *could have caused* a smoldering bale which resulted in this fire."

It is obvious that Donnelly's opinion is based upon speculation and guesswork and has no significant probative value. Nowhere in his affidavit does he express an opinion that a hot bale was in fact the cause of the fire. The insufficiency of Donnelly's speculative testimony to defeat the motion for summary judgment is emphasized by comparing it with the affidavit of an accident reconstruction expert held sufficient in *Bieghler v. Kleppe*, 633 F.2d 531 (9th Cir.1980). The court reasoned:

The expert did more than conclude that defendant's negligence in lighting the tunnel might have caused the accident. He purported to determine that the cause of the accident was defendant's negligence. *Id.* at 534.

We conclude that Donnelly's affidavit raised no genuine issue of material fact and the grant of summary judgment was therefore proper.[4]

4. As it turned out, Gay lost nothing as the result of the dismissal of his counterclaim but the tactical advantage of focusing the attention of the jury on the extent of his own pecuniary loss. As a witness for the defendant at trial, Donnelly's testimony extended over 143 pages of the transcript; a substantial portion was addressed to the alleged contributory negligence of Coats & Clark. While it was consistent with statements in his affidavit submitted in opposition to the motion for summary judgment, its effect was graphically summarized by his statement, "[m]y primary job was discovering the cause and origin of the fire" (TR. 1152), followed immediately by:

"Q You never determined the cause, did you, sir?

A No, sir, I did not...." (TR. 1151)

In submitting the issue of contributory negligence to the jury, the trial court's instruction on the application of the Georgia Comparative Negligence Rule was a model of clarity. The following extracts from the charge are sufficient to make our point:

I charge you that if you should find that the plaintiff Coats and Clark was negligent and that its own negligence was the sole proximate cause of the damage to its product, then, of course Coats and Clark couldn't recover anything from Mr. Gay because you would've determined that Mr. Gay wasn't at fault at all in the circumstances. If you determine that Coats and Clark was negligent and that its negligence was a contributing proximate cause to the damages sustained but that Mr. Gay was also negligent and that his negligence was a contributing proximate cause to damages sustained, but that Coats and Clark was more negligent than Mr. Gay, then Coats and Clark could not recover anything from Mr. Gay because you would've decided that they were more at fault than he was.

Next, if you determine that Coats and Clark was negligent and its negligence was a proximate cause of the damages sustained, and if you conclude that Mr. Gay was also negligent and his negligence was a contributing proximate cause of the damages, and you conclude that they both were equally negligent, fifty-fifty, one just as negligent as the other, then Coats and Clark could not recover anything

## Rejected Evidence

To counter testimony adduced by plaintiff tending to show that Gay was negligent in maintaining the sprinkler system without the advice and assistance of professionals in stocking the bales, and in providing access or inventory aisles only two feet in width, Gay offered to prove by witnesses Futch, Dupree and King that similar habits, customs and methods were employed by Coats & Clark in the operation of its Thomasville warehouse for cotton storage. Rejection of this offer is assigned as error.

■ Gay proceeds from the premise that evidence of custom within a particular industry is admissible as bearing on the standard of care in determining negligence. *Muncie Aviation Corporation v. Party Doll Fleet, Inc.*, 519 F.2d 1178 (5th Cir. 1975); *accord B & B Insulation Co. v. Occupational Safety & Health Review Commission*, 583 F.2d 1364 (5th Cir.1978). We agree but conclude that the evidence relied upon by Gay utterly fails to bring this case within the ambit of that principle.

■ While Gay offered to prove that Coats & Clark was the largest manufacturer of cotton thread in the world, there was no offer of proof that it was a significant warehouser of baled cotton. Nor was there any offer of proof as to the practices of other warehousers. Rather, Gay was content to proffer evidence concerning a single Coats & Clark warehouse at Thomasville, Georgia. Clearly, the methods employed by a single warehouser at a single location are not sufficiently probative of the custom of the warehouse industry generally. Such evidence was irrelevant to the issue of the duty of ordinary and reasonable care owed by Gay. It was properly rejected by the trial judge who may have considered it a subtle but misguided effort

to import into a case at law the equitable doctrine of "unclean hands." [5]

## Conduct of the Judge

■ The most troublesome issue in this appeal arises from Gay's complaint that the trial court, from the outset and throughout the trial, exhibited toward the defendant, his counsel, and his case an attitude of impatience and antagonism that established and set the mood for the trial and unduly burdened his right to a fair trial. In his brief Gay lists twenty-one incidents which he contends conveyed to the jury the impression that the judge was being partisan. No contemporaneous objection was registered to the remarks of the judge which he now insists were prejudicial. However, the lack of timely objection will not preclude review:

> Where a trial judge's comments were so prejudicial as to deny a party an opportunity for a fair and impartial trial, the absence of objections will not preclude our review since counsel will be loathe to challenge the propriety of a trial judge's utterances for fear of antagonizing him and thereby prejudicing a client's case. *Miley v. Delta Marine Drilling Co.*, 473 F.2d 856, 857–58 (5th Cir.), *cert. denied*, 414 U.S. 871, 94 S.Ct. 93, 38 L.Ed.2d 89 (1973). Although not precluded, appellate review is limited to review for plain error. *E.g., Morreale v. Downing*, 630 F.2d 286 (5th Cir.1980).

*Newman v. A.E. Staley Mfg. Co.*, 648 F.2d 330, 335 (5th Cir.1981). Thus, we must decide whether the conduct of the trial judge was so partial and prejudicial as to constitute plain error.

A federal judge is not a "mere moderator of proceedings." *Moore v. United States*, 598 F.2d 439 (5th Cir.1979). Rather, he

from the defendant because you would've concluded that they were equally at fault. Inasmuch as the jury returned a verdict in favor of Coats & Clark in approximately 50 percent of value of its cotton, less salvage, Donnelly's estimate of the total loss resulting from the inoperative sprinkler system, it follows ineluctably that they found that Coats and Clark was guilty of no negligence. Thus the submission of Gay's counterclaim to the jury would have been an exercise in futility.

5. To have allowed Gay to introduce such evidence would have opened the door for a patently frivolous but potentially effective argument to the jury that Coats & Clark was seeking to collect damages from Gay for doing precisely what it has been doing habitually.

possesses broad powers to "comment on the evidence, ... question witnesses [in order to] elicit facts not yet adduced or clarify those previously presented, ... and [to] maintain the pace of the trial by interrupting or cutting off counsel as a matter of discretion." *Id.* The court below did all of these things. This alone does not establish deprivation of a fair trial, however. "Only when the judge's conduct strays from neutrality is the defendant thereby deprived of a fair trial." *Id.*

One of the most demanding tasks of a trial judge is to keep a trial within proper bounds and to move it along as expeditiously as the ends of justice will permit, without taking frequent recesses to admonish witnesses or counsel in the absence of the jury. Firm but impartial hands are required. He must keep uppermost in his mind that "[t]he influence of the trial judge on the jury 'is necessarily and properly of great weight' and his 'lightest word or intimation is received with deference, and may prove controlling'." *Quercia v. United States,* 289 U.S. 466, 470, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933).

We have considered the record as a whole, including the judge's charge to the jury, rather than focusing narrowly on instances of allegedly improper conduct referred to in briefs of counsel. *Newman v. A.E. Staley Mfg. Co.,* 648 F.2d 330, 345 (5th Cir. Unit B. 1981). We note at the outset that the testimony of Gay, called as plaintiffs' first witness for the purpose of cross-examination, extended through 184 pages of the transcript and that his testimony alone accounted for 360 of the 1120 pages of the trial testimony. We recognize how crucial his testimony and his credibility were to the defense. The judge's interjections were not directly denigrating as to either. Many of them did occur while Gay was on the stand or his counsel was eliciting testimony, but they were largely justified. The context in which the judge's remarks were made makes it clear that Gay displayed a pattern of evasiveness while on the stand, which mandated firm intervention by the court. Understandably, the judge's remarks grew somewhat harsher as Gay persisted in his habit of evading

questions or responding to simple questions with extended remarks tailored to his self-interest.

■ We do not condone the sarcasm, the open expressions of impatience, and the intemperate and facetious remarks which occasionally appear in the record. However, after a careful review of a cold, lifeless record, we are left with the impression that the trial judge's impatience was justified. We are not convinced that the jurors may have perceived the trial judge as partial towards the plaintiff and biased against the defendant. Although the trial judge stepped close to the line of neutrality in this case, we conclude that he did not step over it. There was no plain error requiring a reversal.

### Evidence to Support the Verdict

■ Finally, Gay argues unpersuasively that there was a total absence of evidence to support the damage award to either plaintiff. He concedes, as he must, that because there was no motion for directed verdict or for judgment notwithstanding the verdict in the court below, our review is limited to a determination of whether there is *any evidence* in the record which supports the verdict. *Powell v. Merrimack Mutual Fire Ins. Co.,* 667 F.2d 26 (11th Cir.1982).

■ The jury returned a verdict in favor of Coats & Clark in the amount of $803,-281.32, plus 7 percent interest. The record evidence clearly supports this award. Coats & Clark adduced uncontroverted evidence that the total damage to its cotton, after taking into account its net salvage value, was between $1,599,835.53 and $1,659,710.71. Donnelly, Gay's own expert, testified that from 50 percent to 60 percent of the damage to the cotton might have been avoided if the sprinkler system had not been turned off. His opinion easily provides evidentiary support for the award of damages to Coats & Clark in approximately 50 percent of the total amount of damages to its cotton.

The jury also returned a verdict in favor of Whirlpool in the amount of $55,513.00, plus 7 percent interest. Again there was evidence to support this award. Whirlpool's evidence established that the total value of its appliances destroyed by the fire was $111,039.00 and there was no salvage value. Gay insists, however, that the only evidence relevant to the issue of damage to the appliances caused by his negligence was the testimony of Donnelly to the effect that no such causal connection existed.

Essentially, he argues that the appliances were primarily damaged by water and that even if the sprinkler system had been operating properly the appliances would have been damaged to the same extent. He has support for this argument in Donnelly's testimony. However, there was evidence of other negligence on the part of Gay which the jury was entitled to consider. For instance, if he had posted a watchman, the fire might have been discovered at a stage early enough to avoid some of the damage to both appliances and cotton. In any event, since he did not raise the sufficiency-of-the-evidence issue in the court below, his argument will not pass muster under the "any evidence" standard. This is particularly true in light of the rule under applicable Georgia law that recovery for undisputed damage cannot be denied simply because it is difficult or impossible to determine the precise amount of damage caused by defendant's conduct. *See Molly Pitcher Canning Co. v. Cent. of Ga. Ry. Co.*, 149 Ga.App. 5, 253 S.E.2d 392 (1979); *Atlanta Tallow Co. v. John W. Eshelman & Sons, Inc.*, 110 Ga.App. 737, 140 S.E.2d 118 (1964).

The judgments of the District Court are AFFIRMED.