[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-16086
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 17, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-60383-CV-WJZ

RONALD C. WILLIAMS,

Plaintiff-Appellant,

versus

PLANTATION POLICE DEPARTMENT,
Police Officer Joseph Mercogliano,
PLANTATION POLICE DEPARTMENT,
Undercover Detective Steven Bowser,
PLANTATION POLICE DEPARTMENT,
Police Officer Jason Grace,
JOSEPH MERCOGLIANO,
STEVEN BOWSER, et al.,

Defendants-Appellees,

PLANTATION POLICE DEPARTMENT,
Detective William Tighe,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 17, 2010)

Before TJOFLAT, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

Ronald C. Williams, a state prisoner, appeals pro se the judgment in favor of

Officers Joseph Mercogliano, Steven Bowser, and Jason Grace of the Plantation

Police Department ("the Department") on his 42 U.S.C. § 1983 claims of

excessive force.[1]  After thorough consideration, we AFFIRM.

## I.  BACKGROUND

In his pro se amended § 1983 complaint, Williams alleged that Officers

Mercogliano, Bowser, and Grace used excessive force during his arrest on 29

March 2004.  Williams claimed that Officer Mercogliano shot him while his

vehicle was stopped and then punched him in the face, after which Officers

Bowser and Grace kicked him a few times.  As a result, Williams asserted that he

would limp for the rest of his life and all of his front teeth had to be removed.  He

---

[1] Prior to trial, the district court dismissed Defendant William Tighe and all claims except for the excessive force claims against Officers Mercogliano, Bowser, and Grace in their individual capacities.

2

requested $100,000 in compensatory damages and $2.5 million in punitive damages.

At a jury trial,[2] the three police officers testified as follows. Williams fled in his vehicle upon the officers' attempt to apprehend him for a home invasion on 29 March 2004. During the pursuit, Williams lost control of his vehicle and wound up facing oncoming traffic. Officer Mercogliano pulled up in front of Williams, dismounted his motorcycle, and ordered Williams to show his hands. Instead of complying, Williams accelerated his car directly towards Officer Mercogliano, who stepped quickly aside and shot four times at the vehicle as it passed him. After Williams stopped his vehicle, he was handcuffed and given first aid by Officer Grace for a gunshot wound to his leg before the paramedics arrived. All three officers denied hitting or kicking Williams.

Two eyewitnesses corroborated the officers' testimony. Three medical personnel who treated Williams at the hospital further testified that Williams exhibited no facial injuries or other signs of being beaten. Additionally, a forensic investigator opined that based on the skid marks, location of the shell casings, and the bullet trajectories, Officer Mercogliano fired at Williams' vehicle after it

---

[2] Prior to his civil trial, Williams was convicted of burglary and sentenced to thirty years of imprisonment.

3

accelerated and placed the officer in danger. The physical evidence was therefore inconsistent with Williams' assertion that his vehicle was stationary at the time of the shooting.

The jury found that the three officers did not use excessive force in violation of Williams' constitutional rights. After final judgment was entered on 26 September 2008 in favor of the officers, Williams filed a motion for a new trial. In that motion, Williams asserted, inter alia, that he had received newly discovered information which would have affected the trial, and that he was unduly prejudiced by appearing in prison clothes and leg restraints during trial. Before the motion was ruled upon, Williams filed a notice of appeal from the judgment. The court subsequently denied Williams' motion for a new trial. Williams did not file a new notice of appeal or an amended notice of appeal.

On appeal, Williams contends that: (1) he was prejudiced by being forced to wear prison garments and shackles during his civil trial; (2) the district court improperly resolved a discovery issue; (3) he should have prevailed on his excessive force claims based on the evidence at trial; (4) he has newly discovered information which would have made a difference at trial; and (5) the district court should have appointed him counsel.

## II. DISCUSSION

A. <u>Issues Outside the Scope of Appeal</u>

A notice of appeal from a judgment that is filed after judgment is entered, but before disposition of a post-judgment motion, will become effective upon disposition of the motion. Fed. R. App. P. 4(a)(4)(B)(i) (2008). However, "a party intending to challenge an order disposing of [a post-judgment motion] . . . must file a notice of appeal, or an amended notice of appeal." Id. 4(a)(4)(B)(ii). Accordingly, we may not consider the district court's ruling on a post-judgment motion if the party did not properly perfect an appeal by either amending his original notice of appeal or by filing a separate appeal from the denial of his post-judgment motion. See Green v. Union Foundry Co., 281 F.3d 1229, 1233 (11th Cir. 2002) (declining to consider the district court's order denying Green's second post-judgment motion because Green did not file a notice of appeal from that order or an amended notice of appeal).

Here, two of Williams' arguments – that he was prejudiced by having to wear prison clothes and restraints, and that he has newly discovered information about his excessive force claims – were raised for the first time in his motion for new trial. Although Williams filed a notice of appeal after judgment was entered, he did not file a new notice of appeal after the district court denied his motion for

5

new trial, nor did he file an amended notice of appeal. He thus failed to perfect an appeal from the order denying his motion for new trial. See Fed. R. App. P. 4(a)(4)(B)(ii); Green, 281 F.3d at 1233. Consequently, we will not consider the district court's ruling on the motion for new trial regarding Williams' prison clothing and shackles and his claim of newly discovered information. See Green, 281 F.3d at 1233.

B. Discovery Issue

In ground two, Williams contends that the district court improperly resolved an issue concerning discovery material. Williams asserts that the district court misled him into thinking he would receive full discovery by 4:30 P.M. on the day of trial. Instead, Williams found out after trial started that he would not receive a box of discovery materials that the Department had sent to attorneys representing Williams at that time. According to Williams, this box contained crime scene photos and medical records which would have proven his claims of excessive force. Had he known he was not going to receive the materials, Williams asserts that he would have moved for a continuance.

We review a district court's ruling on discovery matters for abuse of discretion. Maynard v. Bd. of Regents of the Fla. Dep't of Educ., 342 F.3d 1281, 1286 (11th Cir. 2003). The record reflects that, prior to trial, the district court

6

granted Williams' pro se motion requesting production of all documents and discovery evidence. At the commencement of trial on 22 September 2008, Williams indicated that he had not received all of his requested discovery. The Department responded that it had produced all requested documents to his attorneys at Carlton Fields, P.A., who were representing Williams at that time. The Department also averred that it had previously sent Williams several depositions of witnesses. Williams acknowledged meeting with the attorneys from Carlton Fields but stated he disagreed with their ideas and thus informed them he did not want their representation. According to Williams, Carlton Fields had only sent him the depositions of himself and his wife. Williams agreed, however, that the Department had sent him several items prior to the denial of summary judgment. The court then informed Williams that it would call Carlton Fields and instruct the attorneys to deliver any discovery to the court's chambers by 4:00 that afternoon. The court cautioned Williams that "[t]hey may say they don't have anything." R4-149 at 108.

Later that day, the court informed Williams that Carlton Fields' attorneys had advised the court that, after they had withdrawn from the case, they had mailed Williams all of the discovery they possessed. After further discussion, the

court asked Williams if he was ready to continue, to which Williams replied, "Yes, sir." Id. at 168.

Based upon the record, we find no abuse of discretion. Contrary to Williams' characterization, the district court did not mislead Williams about whether he would receive the discovery sent to his former attorneys at Carlton Fields. The court made clear that his former attorneys may not have any discovery. After Williams learned from the court that Carlton Fields had forwarded all discovery to Williams' last known address, Williams declared that he was ready to continue. Furthermore, Williams acknowledged at trial that he possessed the underlying file from his criminal case, the depositions of his wife and himself, and other items the Department provided to him. In fact, Williams attached several documents to his brief opposing the Department's motion for summary judgment, including photographs of the crime scene, the statement of an eyewitness, excerpts of trial testimony from his criminal case, pictures of his vehicle after the shooting, a photograph of himself, portions of the government's file, and the arrest affidavit. Williams' contention that he was prejudiced by the non-disclosure of crime scene photographs is thus without merit.

We are similarly unpersuaded by Williams' argument that he was prejudiced by his lack of medical records. His motion for discovery did not include a request

for medical records, only "blood test results." R2-66 at 2. Given that all three medical personnel who testified at trial agreed that Williams had no facial injuries or other signs of being beaten, there is no evidence to support his assertion that his medical records would have proven his excessive force claims. Accordingly, we conclude that the district court did not abuse its discretion in resolving this discovery matter.

C. Whether Williams Should Have Prevailed On His Excessive Force Claim

Williams next submits that he should have prevailed on his excessive force claims based on the evidence presented at trial. Because Williams did not move for a directed verdict at the conclusion of all the evidence or for a judgment notwithstanding the verdict, "our review is limited to a determination of whether there is *any evidence* in the record" to support the verdict. Coats & Clark, Inc. v. Gay, 755 F.2d 1506, 1512 (11th Cir. 1985). We find ample evidence here.

The Fourth Amendment protects a person's right to be free from excessive force during arrest. See Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009). We evaluate the officers' actions for objective reasonableness. See id. "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865,

1872 (1989). All of the circumstances must be considered, including the type of crime at issue, whether the suspect posed an immediate safety threat, and whether the suspect was resisting arrest or was attempting to flee to evade arrest. Id. at 396, 109 S. Ct. at 1872. We view the circumstances from that of a reasonable officer on the scene, bearing in mind that "tense, uncertain, and rapidly evolving circumstances" often require "split-second judgements" about the appropriate use of necessary force. Id. at 396-97, 109 S. Ct. at 1872.

Here, there was overwhelming evidence to support the jury's verdict that the officers did not use excessive force. As mentioned, three police officers and two eyewitnesses testified that Officer Mercogliano fired at Williams after Williams attempted to run him over with his vehicle. This testimony was bolstered by that of the forensic investigator, who explained that the physical evidence was consistent with the officers' version of events. Evidence that Williams posed an immediate threat to an officer's safety, as well as evidence that he was attempting to evade arrest through flight, supported the jury's verdict that Officer Mercogliano did not use excessive force in firing at Williams. See id. at 396, 109 S. Ct. at 1872. As for the purported beating that occurred after the shooting, the testimony of the police officers, eyewitnesses, and medical personnel

10

overwhelmingly established that the three officers did not punch or kick Williams. Accordingly, Williams' challenge to the jury's verdict is without merit.

D. Appointment of Counsel

In his final argument, Williams contends that the district court abused its discretion by failing to appoint him counsel and that this failure violated his Sixth Amendment rights. We disagree.

We review a district court's denial of a motion for appointment of counsel for abuse of discretion. Bass v. Perrin, 170 F.3d 1312, 1319 (11th Cir. 1999). Like all civil litigants, Williams has no constitutional right to counsel. See id. at 1320; Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993). Rather, appointment of counsel is a privilege which a court may grant in its broad discretion for an indigent plaintiff pursuant to 28 U.S.C. § 1915(e)(1). Bass, 170 F.3d at 1320; Kilgo, 983 F.2d at 193. Such appointment is reserved for "exceptional circumstances," however, such as where the facts and legal issues are complex or novel. Bass, 170 F.3d at 1320; Kilgo, 983 F.2d at 193.

According to the record, Williams filed a pre-trial motion for appointment of counsel pursuant to § 1915(e).[3] In response, the district court referred

---

[3] The district court previously denied without prejudice Williams' first motion for appointment of counsel.

11

Williams' request to the Volunteer Lawyers Group. Several attorneys from the law firm of Carlton Fields, P.A. accepted representation of Williams and filed a notice of appearance on his behalf on 21 August 2008. Williams met with his attorneys but disagreed with their proposed presentation of the case. Williams ultimately informed his attorneys on 11 September 2008 that he wished to represent himself at trial because their representation "was not working for him." R3-107 at 2. Pursuant to Williams' instruction, Carlton Fields filed a motion to withdraw from the case. In that motion, Carlton Fields noted that their withdrawal would not prejudice Williams because he had been representing himself in the action for the past eighteen months. The district court subsequently granted the motion to withdraw and denied Williams' motion for appointment of counsel as moot.

We discern no abuse of discretion here. Contrary to Williams' suggestion, the district court provided Williams with counsel but Williams rejected those attorneys of his own accord. Williams argues that the district court should have appointed him counsel after trial began because Williams wore prison clothes and shackles, he was unskilled in the Federal Rules of Civil Procedure, and a discovery violation had occurred. As previously discussed, though, Williams never objected during trial to his clothing or restraints, and there was no discovery

12

violation. As for his ability to try his case, Williams told his appointed attorneys that he believed he was "better prepared" than his attorneys to present his case to the jury, R3-112 at Exh. A, and there is no indication from the trial transcript that he was hampered by his lack of legal skills. Given that he voluntarily rejected the opportunity to be represented by counsel, the district court did not abuse its broad discretion in denying as moot Williams' motion for appointment of counsel.

## III. CONCLUSION

Upon review of the record, and after consideration of the parties' briefs, we AFFIRM the judgment in favor of Officers Joseph Mercogliano, Steven Bowser, and Jason Grace on Williams' § 1983 excessive force claims.

**AFFIRMED.**