Phyllis S. HAMM, Plaintiff-Appellant,

v.

MEMBERS OF the BOARD OF RE-
GENTS OF the STATE OF FLORIDA,
et al., Defendants-Appellees.

No. 82–5319.

United States Court of Appeals,
Eleventh Circuit.

July 1, 1983.

Rehearing and Rehearing En Banc
Denied Sept. 1, 1983.

Alice K. Nelson, Robert J. Shapiro, Tampa, Fla., for plaintiff-appellant.

William E. Sizemore, Shackleford, Farrior, Stallings & Evans, Thomas M. Gonzalez, Tampa, Fla., Dept. of Admin., Legal Affairs, Eric J. Taylor, Vicki Gordon Kaufman, Gene T. Sellers, State Board of Education, Tallahassee, Fla., for defendants-appellees.

Before RONEY and CLARK, Circuit Judges, and GIBSON *, Senior Circuit Judge.

RONEY, Circuit Judge:

The plaintiff, an equal opportunity specialist at the University of South Florida (USF) in Tampa, brought suit under 42 U.S.C.A. §§ 1983, 1985, 1988, and 2000e alleging sex discrimination and retaliation for activity protected by the first amendment and Title VII of the 1964 Civil Rights Act. She sued a number of defendants. As to the Florida Board of Regents and James H. Williams, Secretary of the Florida Department of Administration (DOA), the district court granted a motion to dismiss all claims under Fed.R.Civ.P. 12(b)(6). As to Albert Hartley, a USF administrator, the court dismissed the Title VII claim. The claims against the remaining individual defendants were tried, but at the close of plaintiff's case the court entered judgment for defendants and dismissed the case under Fed.R.Civ.P. 41(b). Plaintiff appeals the dismissals, asserting the trial court improperly adopted defense counsel's argument as its findings of fact and conclusions of law, deprived plaintiff of a fair trial because of expressed bias and prejudgment of the issues, and applied the wrong legal standards. We affirm.

■ Plaintiff does not seriously contest the district court's order dismissing the claims under 42 U.S.C.A. §§ 1983, 1985(3), and 1988 against J.H. Williams as DOA

* Honorable Floyd R. Gibson, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

secretary, the Board of Regents, and its individual members for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). We affirm this aspect of the order because the plaintiff alleged no facts showing personal wrongdoing, knowledge of, or participation in a conspiracy of wrongdoing by others. Plaintiff's counsel acknowledged during a pretrial hearing that the only allegation against the Board was that it and its members were vicariously liable for the named defendants' actions. This is insufficient to sustain a cause of action under either §§ 1983 or 1985(3). *Monell v. Department of Social Services,* 436 U.S. 658, 691–94, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978) (§ 1983); *Baskin v. Parker,* 602 F.2d 1205, 1207–09 (5th Cir.1979) (same); *see Owens v. Haas,* 601 F.2d 1242, 1247 (2d Cir.) (§ 1985), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979).

The plaintiff challenges, however, the propriety of the district court's dismissal of her Title VII claims against these defendants and defendant Hartley for failure to name any of them in the charge she filed with the EEOC. The charge listed the University of South Florida, a number of individuals, and "others" as those discriminating against the plaintiff. The plaintiff contends she specifically complained in the charge about her "employer," and that under Florida law both the DOA and the Board of Regents have interrelated employer functions as to the plaintiff.

Title VII authorizes aggrieved persons to file a civil action against the respondent named in the EEOC charge. 42 U.S.C.A. § 2000e–5(f)(1). The plaintiff listed USF on the charge form as the employer who discriminated against her. In the space for "others who discriminated against you" she listed Mackey, Thompson, Weicherding, James Vickrey as EEO coordinator, Marcia Mann as chairperson of the EEO committee, and "others." In the substantive charge, the plaintiff referred to her "employer." Later sentences, however, mention "the administration," and "patterns and practices of employment at USF." The amended charge, as to which the plaintiff

had the assistance of counsel, mentions only USF and various individuals.

■ We affirm the dismissals. While the matter is not entirely free from doubt, particularly with regard to the Board of Regents, it is not at all clear in the record before us that the scope of an EEOC investigation which could have reasonably grown out of this administrative charge would have included the DOA or the Board of Regents. *Terrell v. United States Pipe & Foundry Co.,* 644 F.2d 1112, 1123 (5th Cir. 1981), *vacated and remanded on other grounds,* 456 U.S. 955, 102 S.Ct. 2028, 72 L.Ed.2d 479 (1982); *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir. 1970).

The court granted a motion by the remaining defendants for an involuntary dismissal under Fed.R.Civ.P. 41(b) on the ground that plaintiff failed to establish a prima facie case under either Title VII or §§ 1983 and 1985. Rather than entering written findings of fact and conclusions of law, however, the court ordered defense counsel to have his argument on the motion transcribed, and the order of dismissal adopted that argument as findings and conclusions.

■ Fed.R.Civ.P. 41(b) requires a court to make findings as required by Rule 52(a) if it renders a judgment on the merits against the plaintiff. These fact findings are subject to the clearly erroneous standard of review regardless of whether they were initially prepared by the trial judge or the prevailing party. *Keystone Plastics, Inc. v. C&P Plastics, Inc.,* 506 F.2d 960, 962–63 (5th Cir.1975); *Robinson v. M/V Merc Trader,* 477 F.2d 1331, 1332 (5th Cir. 1973). Although this Court has consistently condemned the practice of unconditionally adopting findings submitted by one of the parties, *Keystone Plastics,* 506 F.2d at 962, the ultimate question is whether the findings possess that degree of clarity necessary for appellate review and then whether there is substantial record evidence to support the findings. *Florida Board of Trustees v. Charley Toppino & Sons, Inc.,* 514

F.2d 700, 703 & n. 7 (5th Cir.1975); *Keystone Plastics, Inc.,* 506 F.2d at 963. We conclude that in this case the findings, as articulated in defense counsel's argument, are sufficiently clear to afford review and that the record evidence supports the dismissal.

The plaintiff contends that she was denied a fair trial because the district judge expressed bias and prejudged the issues. She points to several actions by the trial judge to buttress her argument, including refusals on several occasions to allow plaintiff's attorney to respond to defense objections, a statement near the start of trial that he "was not going to hear a great lecture about the First Amendment and things like that," interruptions during the presentation of plaintiff's case while permitting the defense to proceed without interruption, and refusals to allow re-direct examination.

Two statutes govern the recusal of a federal district judge. 28 U.S.C.A. §§ 144, 455. Section 144 provides for recusal when a party files a timely and technically correct affidavit and motion alleging the judge before whom the matter is pending is personally biased or prejudiced against him or in favor of an adverse party. Section 455 sets forth a general rule that a judge shall "disqualify himself in any proceeding in which his impartiality might reasonably be questioned," 28 U.S.C.A. § 455(a), and also lists several specific situations in which a judge must do so. 28 U.S.C.A. § 455(b). ■ The plaintiff in this case invoked neither statute in the district court so that the plain error standard of review applies here. *Cf. United States v. Schreiber,* 599 F.2d 534, 535 (3rd Cir.), *cert. denied,* 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979). The general rule is that bias sufficient to disqualify a judge must stem from extrajudicial sources, *Whitehurst v. Wright,* 592 F.2d 834, 838 (5th Cir.1979), and must be focused against a party to the proceeding. *Davis v. Board of School Commissioners of Mobile County,* 517 F.2d 1044, 1050–52 (5th Cir.1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). An exception

to that rule is made when a judge's remarks in a judicial context demonstrate such pervasive bias and prejudice that it constitutes bias against a party. *Davis,* 517 F.2d at 1051. Neither a trial judge's comments on lack of evidence, rulings adverse to a party, nor friction between the court and counsel constitute pervasive bias. *Whitehurst v. Wright,* 592 F.2d at 838; *Plaquemines Parish School Board v. United States,* 415 F.2d 817, 824–25 (5th Cir.1969).

■ After reviewing the transcript, we cannot conclude that the trial judge's conduct in this case requires a reversal. While some of his remarks may seem intemperate and impatient, given the short duration of the proceedings, his actions do not evince pervasive bias. This is not a case in which the judge openly exhibited "a partisan zeal" for the defendants or "stepped down from the bench to assume the role of advocate" on the defendants' behalf. *Knapp v. Kinsey,* 232 F.2d 458, 467 (6th Cir.), *cert. denied,* 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86 (1956); *Crowe v. DiManno,* 225 F.2d 652, 659 (1st Cir.1955).

To understand plaintiff's substantive arguments that she established a prima facie case under the first amendment and Title VII, a brief knowledge of the facts is necessary.

There is little dispute about the relevant facts. In 1972 defendant Mackey, then the president of the University of South Florida, appointed three people to assist certain administrators in the implementation of programs to promote affirmative action and equal employment opportunities at the university. He selected plaintiff, a hispanic female, as a special assistant to Hartley, the vice president for administration. Defendant Thompson later succeeded Hartley in that office.

Shortly after her appointment, plaintiff began to encounter various difficulties because of what, in her view, were restrictions imposed by the administration on the performance of her duties. The first situation involved an employee promotion. Hamm investigated the complaint and helped the

employee draft a letter describing her difficulties. When she showed Hartley a copy he instructed her not to correspond on behalf of aggrieved employees, and plaintiff did not send the letter. Hamm also attended a grievance committee meeting with the employee. Hartley and Mackey instructed her not to attend such meetings as an employee adviser.

In a second incident, the plaintiff copied the contents of an employee's personnel file and gave them to the employee's supervisor, a faculty member, to give to the employee. The employee had filed a charge against the university with a federal agency. Defendant Weicherding, USF director of personnel, shouted objections about this action at Hamm in the presence of the faculty member. He later apologized to the faculty member but not to the plaintiff.

The third disagreement arose when Charles Moore asked Hamm to investigate his termination from the security department. After doing so, she wrote a report of her findings in which she recommended that Moore be rehired. At his request, Hamm gave Moore's copy of the report to the student newspaper before her supervisor, defendant Thompson, had seen the report. There was some dispute about whether Moore's supervisor had seen the report before Hamm released it. The newspaper printed an article about Moore's termination quoting the report. Thompson told the plaintiff not to disclose such reports to the press in the future.

The final dispute involving an individual employee arose from the plaintiff's efforts to assist Carol Snydle to obtain a promotion. There is some uncertainty in the record as to whether Snydle or her supervisors initially sought plaintiff's assistance. In any event, the reason given for Snydle's rejection was that she lacked the required college degree. Hamm proceeded to search the university's personnel files and found that five persons, three females and two males, held certain positions even though they did not possess the requisite qualifications. She provided this information to Snydle, who submitted it in support of a grievance she had filed against USF with the Florida Career Service Commission. Defendant Weicherding wrote a letter to the plaintiff accusing her of unprofessional conduct. The state subsequently investigated certain employee histories, including those of the plaintiff and the five employees mentioned in her letter to Snydle.

In two instances the plaintiff was reprimanded for conduct undertaken with respect to employees in general. The first situation involved a handout Hamm prepared and distributed to employees containing information on equal employment matters and references to various federal statutes. Her supervisor at the time, defendant Hartley, instructed her to cease distribution because, according to Hamm's testimony, employees might misunderstand the publication. Hartley said he objected to the handout because it was negative in tone, contained editorial comments, and had not been reviewed by USF's attorney. On another occasion, the plaintiff was told to discontinue having question and answer sessions in connection with her presentations at employee orientations. This occurred after several employees complained to defendant Thompson that plaintiff's discussions about discrimination were negative.

Throughout the course of these events, which spanned nearly three years, the plaintiff's job was classified as a "career service" position, a non-professional job classification. The salary ranges for such positions are established on a statewide basis by the DOA. Although USF initially wanted to classify the slot as a professional position, it could not do so without the permission of the Board of Regents. It was not until late 1974 that the Board of Regents approved the upgrading of the special assistant's job to an administrative and professional (A&P) position. Shortly after the plaintiff had filed a written complaint with the Equal Employment Opportunity Commission, defendant Thompson informed her she was being transferred to the position of employee benefits manager in the personnel division because the career service position was being replaced ·with the upgraded spe-

cial assistant's position. The university subsequently hired a black female with a college degree, which the plaintiff did not possess, for the new A&P position.

The plaintiff argues that by increasingly circumscribing her in the performance of her duties and ultimately transferring her to a less desirable position the defendants unlawfully harassed and retaliated against her for her opposition to discrimination and her advocacy of enforcement of equal employment opportunity laws, activities protected by the first amendment and Title VII.

■ To establish a prima facie case that the defendants impermissibly transferred her in retaliation for the exercise of first amendment rights, the plaintiff initially had to show that she engaged in constitutionally protected activity and that the activity may have been a factor in the adverse employment decision. The burden would then shift to the defendants to prove by a preponderance of the evidence that they would have taken the same action absent the protected conduct. *Mount Healthy City Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Paschal v. Florida Public Employees Relations Commission,* 666 F.2d 1381, 1384 (11th Cir.1982), *cert. denied,* 457 U.S. 1109, 102 S.Ct. 2911, 73 L.Ed.2d 1319 (1982).

■ An understanding of the nature of plaintiff's job demonstrates why the district court must be affirmed. Her role was to aid and assist her superior, the vice president for administration, in resolving problems of discrimination facing USF's non-academic personnel. Although she may have been an adviser, expediter, or go-between, the record is clear that she had no ultimate decision-making authority. That authority, and the concomitant responsibility, was vested in her supervisor. The record demonstrates that, despite repeated admonitions as to the procedures her supervisors wished her to follow in resolving discrimination complaints, the plaintiff persisted in "going public" rather than first going through her supervisor, the person with the ultimate decision-making authority. The university placed the plaintiff in a position which required loyalty to her supervisor and expected her to perform her assigned duties within the framework established by the university. Despite her statements that she understood she was not to function as an advocate on behalf of aggrieved employees, she consistently did so, to the extent of releasing investigative reports to the campus newspaper without her supervisor's prior approval and supplying information to an employee contained in personnel files without the approval of the administrator charged with the responsibility for maintaining those files. Such activity is not protected by the first amendment. *Abbott v. Thetford,* 529 F.2d 695, 702–08 (Gewin, J., dissenting), *adopted as the majority opinion on rehearing,* 534 F.2d 1101 (5th Cir.1976) (en banc), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 804 (1977).

■ In any event, the evidence supports the finding that defendants would have transferred plaintiff regardless of her disputed activity. First, she did not possess one of the requisite qualifications, a college degree, for the upgraded A&P position approved by the state and filled by USF. As part of her case-in-chief the plaintiff introduced the deposition testimony of defendants Hartley and Thompson. They testified that from the inception of the special assistant's job USF wanted it to be a professional A&P position rather than a career-service, non-professional position. Shortly after the Board of Regents approved such a slot, USF filled it with a black female holding a degree. The desire to upgrade the position constituted a valid reason for laterally transferring the plaintiff and hiring a person who met the requirements. Second, the defendants testified that they had lost confidence in plaintiff's ability to satisfactorily function in the special assistant's position. Such articulated reasons provide a sufficient basis for the court's finding that plaintiff failed to establish a connection between her activity and the transfer. *See Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Megill v. Board of Regents of State of*

*Florida,* 541 F.2d 1073, 1084–85 (5th Cir. 1976).

▮ To establish a prima facie case of retaliation for participating in the process of vindicating civil rights through Title VII, a plaintiff must show (1) actions protected by the statute, (2) an adverse employment action, and (3) a causal link between the protected actions and the adverse employment decision. *Whatley v. Metropolitan Atlanta Rapid Transit Authority,* 632 F.2d 1325, 1328 (5th Cir.1980). The burden of going forward then shifts to the defendant to articulate some legitimate, non-discriminatory reason for the adverse decision. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253–55, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *Lindsey v. Mississippi Research and Development Center,* 652 F.2d 488, 492 (5th Cir. 1981).

▮ There is substantial evidence to support the finding that the plaintiff failed to show protected activity. The university employed Hamm to serve as an adviser to the vice president, not as an advocate on behalf of individual employees. Her duties included investigating instances of alleged discrimination, filing written reports of her findings with the appropriate supervisory personnel, and recommending appropriate action for their final approval or disapproval. Rather than supporting a claim of retaliation, the evidence shows that plaintiff repeatedly chose to work outside the framework USF was attempting to establish to deal with discrimination claims. An employer may remove an employee from a position similar to that at issue here without violating Title VII based on the manner in which the employee undertakes his or her duties. *Whatley v. Metropolitan Atlanta Rapid Transit Authority,* 632 F.2d at 1329.

▮ As with the first amendment claim, plaintiff failed to establish a causal link between her activity and the transfer. There is no evidence showing that any of the defendants ever directed the plaintiff to overlook claims of discrimination by employees or to cease bringing such claims to their attention. The evidence does show the defendants consistently attempted to impress on the plaintiff the need to go through the appropriate channels, thus giving the administration the first opportunity to disseminate correct information to employees in general and to address the problems of individual employees. The trial court properly dismissed the Title VII claim.

▮ Plaintiff also alleged sex and national origin discrimination because her salary was less than that of the two other special assistants—a female faculty member and a black, male administrator—appointed to address discrimination problems encountered by faculty and students. The district court correctly dismissed these claims. These special assistants assumed their affirmative action responsibilities as an addition to their regular, full-time positions and each possessed greater academic qualifications than plaintiff. Additionally, as a career service employee plaintiff's salary was set by the DOA and not by the university. Thus she failed to show that her duties and qualifications were similar or that the lesser salary was a pretext for discrimination.

▮ Finally, the court did not err in dismissing plaintiff's claim of discrimination based on the university's failure to appoint her to the newly created A&P position. Notwithstanding plaintiff's failure to introduce any evidence regarding the qualifications for the job and whether she met them, the record demonstrates the person hired held a degree while plaintiff did not.

AFFIRMED.