**Clois RAINEY, d/b/a D & K Truck Sales, Plaintiff,**

**v.**

**INTERNATIONAL HARVESTER CREDIT CORPORATION and Northside International, Inc., Defendants.**

No. 84 C 9019.

United States District Court, N.D. Illinois, E.D.

March 13, 1986.

Richard A. Rheinstrom, Ben E. Palmer, Leslie Kipnis, Chicago, Ill., for plaintiff.

Robert A. Filpi, Stack & Filpi, Robert W. Hallock, John R. Teitgen, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

This matter is before the court on appeal by plaintiff, Clois Rainey, d/b/a D & K

Truck Sales ("Rainey"), from an order of the bankruptcy court. The bankruptcy court ruled that counter-defendant International Harvester Credit Corporation ("IHCC") had a superior right to the sales proceeds of two trucks which plaintiff allegedly sold to private parties through the debtor, defendant Northside International, Inc. ("Northside"). For the reasons stated below, the court affirms the decision of the bankruptcy court.

I

The facts found by the bankruptcy court are as follows. On January 24, 1983, Lawrence Jesewitz, Northside's president, called IHCC about an application by Mr. and Mrs. Allen Byrd for credit with which to purchase a used truck from Northside. Northside later sent IHCC a copy of the written credit application; IHCC approved the application and informed Northside that IHCC would purchase the retail installment contract to be entered into by Northside with the Byrds. After receiving this approval from IHCC, Northside and the Byrds executed a retail installment contract on February 7, 1983. The Byrds received financing in the amount of $26,000.

On February 15, 1983, Northside phoned in to IHCC another application for credit with which to buy a truck. This application was made by Mr. and Mrs. Paul Langer. About two days later, IHCC informed Northside that the Langer application was approved and that IHCC would purchase the retail installment contract to be entered into by Northside and the Langers. As a result of IHCC's approval, Northside and the Langers executed a retail installment contract on February 18, 1983. The Langers received financing in the amount of $14,500.

The Byrd and Langer contracts were sold and assigned to IHCC, on February 22, 1983, when Jesewitz signed the contracts and gave them to Richard S. Daniels, IHCC's collections manager. In the contracts Northside represented, among other things, that it had no knowledge of any facts which would impair the validity or value of the contracts. In addition, the contracts expressly made their assignment to IHCC subject to the terms and conditions of the financing agreements then in effect between IHCC and Northside. These financing agreements contained provisions in which Northside represented, in effect, that the Byrd and Langer contracts were free from defenses, offsets or counterclaims, constituted first liens in favor of IHCC upon the Langer and Byrd trucks, and that the contracts represented actual bona fide sales in the ordinary course of business. Also, at the time the contracts were given to Daniels, Jesewitz orally represented that the trucks were free and clear inventory with no liens or encumbrances.

On March 15, 1983, Rainey telephoned Daniels and told him that Northside owed Rainey money for the trucks. On about March 20, 1983, Rainey, Jesewitz and Daniels held a meeting. At that meeting, Rainey claimed that he owned the Byrd and Langer trucks and that IHCC owed him the proceeds of the retail contracts. IHCC refused to pay Rainey. As a result, Rainey filed the present complaint.

While Rainey does not dispute most of these facts, he does tell a somewhat different story. Rainey claims that the contract signed by the Byrds on February 8, 1983 was misdated. The error was discovered on February 21, 1983, and a new correct contract was signed on February 25, 1983. When Daniels arrived at Northside on February 21, 1983, neither this second Byrd contract nor the Langer contract had been forwarded to IHCC. Moreover, sometime before February 21, 1983, IHCC learned that Northside had materially breached the financing agreement between Northside and IHCC. Therefore, IHCC was under no obligation to purchase the Langer and Byrd contracts. Thus, IHCC gave nothing of value when it purchased these contracts at some point after February 21, 1983. In addition, Rainey ·claims that IHCC knew that Northside was not the true owner of the trucks.

## II

In Count I of the amended complaint, Rainey alleges that the debt owed him by the debtor Northside should be declared nondischargeable under 11 U.S.C. § 523(a)(4). In addition he asks that Northside turn over to him the $40,500 he believes IHCC paid Northside as a result of the Byrd and Langer transactions. In Count II, Rainey seeks a determination that, if the $40,500 is in the possession of IHCC, IHCC holds these funds in trust for Rainey and IHCC should turn the funds over to him.

At the outset it should be noted that, in reviewing a decision of the bankruptcy court, the district court must accept the bankruptcy court's findings of fact, unless they are clearly erroneous. Fed.Bankr.P. 8013 (West 1984). Questions of law, however, are reviewed independently. *In Re Kimzey,* 761 F.2d 421 (7th Cir.1985). In this appeal, Rainey attempts to raise three issues: (1) that no bankruptcy judges lawfully existed after June 27, 1984; (2) that the bankruptcy judge lacked subject matter jurisdiction over the claims involved here since resolution of those claims involve determination of "non-core" issues; and (3) that the bankruptcy court erred in finding that IHCC had the superior right to possession of the two trucks. The first two questions are issues of law; the third question involves primarily a question of fact.

Rainey articulates the first issue as follows: "Does Congress have the right under Article II Sec. 2 of the U.S. Constitution to appoint judges with life tenure when such Act is clearly the sole dominion and providence of the office of the President of the United States?" Plaintiff's Memorandum at p. 3. Rainey's brief fails to cite the statute which he challenges, but the court assumes he means to attack the constitutionality of §§ 106 and 121 of the Bankruptcy Amendment and Federal Judgeship Act of 1984 ("1984 Amendments"). As one bankruptcy judge noted in ruling on this issue in another case, this challenge to the validity of the bankruptcy court system was very much in vogue at one time, but every district court which has ruled on the issue has rejected it. *In Re Baldwin United Corporation,* 12 Bankr.Ct.Dec. 913, 915, 48 B.R. 49 (Bkrtcy.S.D.Ohio 1985) citing *In re Benny,* 12 B.C.D. 495, 44 B.R. 581 (N.D. Cal.1984); *In re Tom Carter Enterprises,* 12 B.C.D. 536 (C.D.Cal.1984); *In re Wastch Factoring, Inc.,* Misc. No. B–0015W (D.Utah Nov. 26, 1984). The court's opinion in *In re Tom Carter Enterprises* advances a scholarly analysis of this issue, and, since this court agrees with the decision reached there, the court need not add to that discussion. Plaintiff's first issue raises no grounds for reversal of the bankruptcy court's decision in this case.

Furthermore, the second issue does not require reversal of the bankruptcy court. Rainey appears to contend that by deciding the issue of who had the superior right to the two trucks, the bankruptcy court unlawfully decided a "non-core" issue. This argument is without merit for a number of reasons. First, in his complaint Rainey asked the bankruptcy court to order Northside to turn over to him the $40,500 he believed Northside received from IHCC. He also asked the court to declare a constructive trust in his favor for any of these funds still held by IHCC. He further requested that IHCC be ordered to turn the money over to him. Resolution of Rainey's claim by the bankruptcy court necessarily involved resolution of the issue of who, as between Rainey, Northside and IHCC, had the superior interest in the trucks. Since IHCC claimed a prior lien on the trucks, the bankruptcy court's determination of the matter fell squarely within its jurisdiction over "core" proceedings as stated in 28 U.S.C. § 157(b)(2)(K) (core proceedings include, "determination of the validity, extent, or priority of liens").

Second, Rainey never asked the bankruptcy judge to make the determination of whether the matter involved a non-core proceeding. *See,* 28 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection....")

While the court could find no cases interpreting this provision, nor did the parties cite any cases, this court's view of § 157(b)(3)'s requirement that the party's motion must be "timely", means that the party's failure to raise the issue before the bankruptcy judge results in waiver of the issue. Therefore, plaintiff may not raise this issue on appeal here.

■ Finally, Rainey's "non-core" argument is without merit because, by bringing his complaint, he consented to the bankruptcy court's jurisdiction over this matter. See, 28 U.S.C. § 157(c)(2) ("the district court, with the consent of all the parties to the proceeding, may refer [a non-core proceeding that is] related to a case under Title II to the bankruptcy judge to hear and determine"). Thus, by bringing his claim seeking affirmative relief, as well as by failing to timely object, plaintiff impliedly consented to the bankruptcy court's jurisdiction over the proceedings.

The third issue Rainey raises on appeal challenges the substance of the bankruptcy judge's decision. The bankruptcy judge dismissed both counts of Rainey's complaint, and held that IHCC has a superior right to the two trucks. Rainey does not challenge the part of the decision dismissing his complaint. Instead he quarrels with the second part of the bankruptcy judge's decision. The essence of that decision is contained in the following statement:

> It is conceded that IHCC was not aware of the collusion between Rainey and Jesewitz; its actions were consistent with the representations made to it and to its contracts with Northside. If facts had been as represented to be, Byrd and Langer would have received title to the trucks, subject to the lien of IHCC; upon default in payment IHCC could have gained possession of the trucks. They should be permitted to do so now....

Bankruptcy Court Amended Opinion and Order, August 16, 1985, p. 9. Despite the finding of the bankruptcy court that Rainey and Northside had fraudulently secured financing from IHCC for the two trucks, Rainey contends the decision in favor of IHCC is flawed because: (1) the evidence shows IHCC knew that Rainey had title to the trucks, and thus the trucks were not Northside's to sell; and (2) IHCC had a duty to investigate and determine who had title to the trucks. Both these arguments are frivolous.

Rainey's first argument depends on a rejection by this court of the findings of fact made by the bankruptcy court. This court will not reject those findings since they are not clearly erroneous. Daniels testified that he did not know that Northside was acting as Rainey's "agent". Rainey contends Daniels testimony is controverted by Jesewitz's testimony that Daniels was aware of this agency relationship. Apparently the bankruptcy judge, who heard the witnesses testify, believed Daniels rather than Jesewitz. Credibility determinations are properly left to the court which heard and saw the testimony of the live witnesses. (This proposition is so well known it needs no citation to authority). In addition, in his brief Rainey admits that this agency relationship was "secret". Plaintiff's Memorandum of Law at p. 5. Hence, Rainey presents no basis for disturbing the bankruptcy court's factual findings on this issue.

Plaintiff's second basis for appeal is that IHCC had a duty to investigate to see if Northside had title to the trucks. This argument was made to the bankruptcy judge and while he did not specifically reject it, the judge implicitly found that IHCC had no duty to investigate. This court agrees that Rainey cannot succeed on this argument.

■ The Illinois Commercial Code defines good faith as "honesty in fact in the conduct or transaction concerned", ILL. REV.STAT. ch. 26, § 1–201, and there is no requirement that a good faith purchaser of a note investigate the facts. *A.C. Davenport & Son Co. v. United States*, 703 F.2d 266, 269 (7th Cir.1983). Moreover, in this court's view, Rainey's fraudulent conduct estops him, as against IHCC, from asserting ownership rights to the two

trucks. *See, e.g., Commodity Futures Trading Commission v. Premex, Inc.,* 655 F.2d 779, 784 N. 10 (7th Cir.1981) ("a principal is liable for the deceit of its agent, if committed in the very business the agent was appointed to carry out"). This estoppel principle lends additional support to the bankruptcy judge's decision.

For these reasons the court dismisses the plaintiff's appeal of the bankruptcy court's decision in this case.