In re Alvin S. MULLER and Phyllis H. Muller, Debtors.

FIRST NATIONAL BANK OF PEORIA, a National Banking Association, Plaintiff,

v.

Alvin S. MULLER, Phyllis H. Muller, Glen Rogers, Robert E. Rice, Myrtle R. Rice, Charles E. Covey, Trustee, and Daniel M. Harrod, Defendants.

No. 86–3021.

United States District Court, C.D. Illinois, Springfield Division.

March 31, 1987.

David B. Radley, Peoria, Ill., for plaintiff.

Michael W. Heller, Gary S. Schwab, Peoria, Ill., James P. Kellstedt, Peoria Heights, Ill., Glenn J. Church, Peoria, Ill., Carl Reardon, East Peoria, Ill., for defendants.

Charles E. Covey, trustee, Peoria, Ill., pro se.

Daniel M. Harrod, Eureka, Ill., pro se.

## OPINION AND ORDER

MILLS, District Judge:

This appeal from the bankruptcy court concerns the scope that court's authority to

decide the interests of the parties in proceeds of a certified check issued to the debtors, but never cashed.

Before the debtors filed for bankruptcy, they had filed suit in state court to determine ownership of a farm for which the check was tendered. After they filed bankruptcy, a creditor bank perfected a lien on the check, and filed an adversary proceeding to determine the priority of its lien. The bankruptcy court found that the check was tendered in full payment for the farm, that the debtors had accepted the check, and that the bank had a first and prior lien.

This appeal followed.

In sum: We affirm.

### Background

Alvin S. Muller and Phyllis H. Muller filed a voluntary petition under Chapter 7 of the Bankruptcy Code on May 30, 1984. Charles E. Covey was appointed interim trustee. On June 21, 1984, the First National Bank of Peoria (bank) filed an adversary proceeding in bankruptcy for a declaratory judgment and mandatory injunction against Defendants Alvin and Phyllis Muller, Glen Rogers, Robert E. Rice, Myrtle R. Rice, Charles Covey, and Daniel Harrod. The bank claimed a first and prior lien upon a certified check drawn on the First National Bank in East Peoria, dated November 16, 1979, signed by Myrtle R. Rice, and payable to the Mullers in the amount of $126,539.23. In its complaint, the bank stated that each of the Defendants had—or might claim—a lien or interest to the check or proceeds.

The Rices moved to dismiss the bank's complaint, lift the automatic stay and allow pending state court litigation to continue. The pending state court litigation is the suit filed in 1980 in Tazewell County by the Mullers and Rogers against the Rices to determine ownership of property known as "Fischer Farm." Fischer Farm is the property for which the Rices had allegedly tendered the certified check in question here.

The Mullers never negotiated the check, which bore the legend, "payment in full as agreed for the sale of Fischer Farm, Groveland Township, Ill.," on its face, and terms of sale on the back.[1] In the event the bankruptcy court refused to lift the stay or dismiss the bank's complaint, the Rices alternatively requested issuance of a declaratory judgment that the certified check for $126,539.23 was payment in full for Fischer Farm.

Rogers claims a one-half interest in the $126,539.23 check. The Mullers and Rogers claim there was a partnership between the Mullers, the Rices, and Rogers giving each a one-third interest in Fischer Farm. The Mullers deeded the property to the Rices, but claim they did so for zoning purposes in accordance with the partnership agreement. According to Muller, Robert Rice refused to put the terms of the "joint venture" in writing, and subsequently tendered the check. Therefore, according to Rogers' brief, the Mullers and Rogers sought in state court to rescind the partnership agreement and return the Fischer Farm to the Mullers and Rogers. In his answer in this case, Rogers claims that the bank's interest extended only to the Mullers' one-half of the check and its proceeds.

Defendant Daniel Harrod filed pleadings claiming an attorney's lien on the check but failed to appear or offer evidence at the February 4 hearing. Attorney Harrod also filed a motion to dismiss the bank's complaint.

After a hearing on August 20, 1984, Bankruptcy Judge Max Lipkin entered an order denying pending motions, except Harrod's, which was denied at a later date. The Rices filed a motion on August 30, 1984, objecting to the bankruptcy court's jurisdiction, which the bankruptcy court also denied. They subsequently filed an answer in which they demanded a

---

1. The back of the check read:

| Total amount of sale | $240,000.00 |
|---|---|
| Less Federal Land Bank Mortgage on the Fischer Farm | 113,460.77 |
| | $126,539.23 |

Will pay in full to Alvin S. Muller and Phyllis H. Muller.

jury trial.[2] The court conducted a hearing on the bank's complaint on February 4, 1985.[3] In its final order, the court held that in 1977 the Mullers had agreed to sell the Fischer Farm to the Rices, that the Mullers conveyed the property to the Rices, and that a disagreement subsequently developed as to the terms of the agreement.

The court found further that by signing a promissory note purporting to create an attorney's lien on the check and by holding exclusive possession of the check for more than four years [4] the Mullers had accepted and become owners of the check and its proceeds.

The bankruptcy court found insufficient evidence to prove that Glen Rogers owned the check or any part of the proceeds, and found that the Rices conveyed the check as payment in full for the property. The court concluded that the bank had a first and prior lien on the check and its proceeds, ordering the Mullers to endorse the check over to the bank, and that title to the check and proceeds be vested in the bank. Alvin Muller and Glen Rogers appeal.

## Jurisdiction

Although neither appellant directly raised the issue of the bankruptcy court's jurisdiction in this case, their objections skirt the issue. The court is therefore required to address the issue of subject matter jurisdiction *sua sponte*.

■ Muller claims that the findings of the bankruptcy court—that the Mullers owned the check and that the check was payment in full for the land—were beyond the Court's authority. Muller also attacks the Court's authority to decide a case in which a jury demand had been made. Rogers claims that the bank could not secure a lien on property which the debtor did not accept. These contentions raise the issue of whether or not the adversary proceeding heard by the bankruptcy court is a "core" proceeding under 28 U.S.C. § 157(b)(2) [5],

---

2. Both appellants also claim that the bankruptcy court improperly decided a case where a jury demand had been made. Appellee notes that although the Rices had demanded a jury, neither of the appellants had. However, since both Rogers and Muller participated in the February 4 hearing without objecting to proceeding without a jury, we think the parties waived any right to a jury trial. *U.S. v. 1966 Beechcraft Aircraft Model King Air*, 777 F.2d 947 (4th Cir.1985). *See also National Family Insurance Co. v. Exchange Nat'l Bank of Chicago*, 474 F.2d 237, 241 (7th Cir.), *cert. denied*, 414 U.S. 825, 94 S.Ct. 129, 38 L.Ed.2d 59 (1973).

3. Appellants claim notice of the hearing was inadequate. Rogers notes that the notice was marked on the "hearing" line, but not on the "trial" line. The notice stated the hearing would be on the bank's complaint. Rogers claims this was inadequate because it omits reference to his answer, affirmative defense and counterclaim. However, the bank's attorney suggested at the August 20 hearing on the motions that after all the motions were disposed of the next step would be to "set it down for trial and let the parties make a claim to this check come in and put on their evidence." No authority was cited for appellants' position; however, generally, notice in a bankruptcy proceeding is adequate if it is reasonably calculated to achieve actual notice. *See In re Wm. B. Wilson Mfg. Co.*, 59 B.R. 535, 538 (Bankr.W.D.Texas 1986). We think the notice given here accomplished that purpose.

4. David Radley, the bank's attorney, took possession of the check on December 9, 1983.

5. 28 U.S.C. § 157(b) states as follows:

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

and whether the court acted within the scope of its authority in such proceedings.

Core proceedings include most matters which are integral to the adjudication of a bankruptcy, or matters which were traditionally before the bankruptcy court. See 28 U.S.C. § 157(b)(2) (Supp.1986); *Gaslight Club v. Official Creditors Committee*, 46 B.R. 209 (N.D.Ill.1985). Included among these integral functions are "determinations of the validity, extent, or priority of liens." 28 U.S.C. § 157(b)(2)(K).

The adversary proceeding before the Court in this case was invoked to determine the priority of the bank's lien. However, Muller claims that the Court erred in making findings of fact related to issues involved in the state court suit; specifically, that the Mullers owned the check and that it was payment in full for the land.

■ It is true that the bankruptcy court loses jurisdiction when property leaves the estate or has been sold. *In the Matter of Xonics, Inc., et al.*, 813 F.2d 127 (7th Cir., 1987), or when the debtor or estate no longer has an interest in the property. *See In re Denalco Corp.*, 57 B.R. 392 (N.D.Ill. 1986); *In re Dr. C. Huff Co., Inc.*, 44 B.R. 129 (Bankr.W.D.Ky.1984).

■ Still, when several parties, including the debtor, claim an interest in certain property, it is within the bankruptcy court's jurisdiction to determine the interests of all of the parties concerned. *In the Matter of Xonics, Inc., et al.*, 813 F.2d at 131. Consider:

> Suppose A, B, and C claim interests in a pool of oil. If A is a bankrupt, the bankruptcy court could determine the interests of all three in the property under 28 U.S.C. § 157(b)(2) or § 157(c)(1), because only after identifying the "property" of the estate may the court apportion the property among creditors.

*Id.* at 131.

In *Rainey v. International Harvester Credit Corp.*, 59 B.R. 987 (N.D.Ill.1986), the Court reached a similar conclusion. The Court held that the bankruptcy court's determination of who had the superior right to two trucks was not an unlawful determination of a "non-core" issue. There, the plaintiff was the title owner of trucks sold through the debtor (Northside) to the credit corporation. He sought $40,-500 that he thought the credit corporation had paid Northside, or a determination that if the credit corporation still possessed the money, that it be held in trust and turned over to him. There, the Court said:

> Resolution of Rainey's claim by the bankruptcy court necessarily involved resolution of the issue of who, as between

(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.
(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.
(4) Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code,

shall not be subject to the mandatory abstention provisions of section 1334(c)(2).
(5) The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.
This section was added to the Bankruptcy Code as part of the *Bankruptcy Amendments and Federal Judgeship Act of 1984*, enacted July 10, 1984, which took effect immediately and were to govern all bankruptcy cases then pending. We also note that a district court may classify a proceeding where the bankruptcy court has not already done so. *Interconnect Telephone Services v. Farren*, 59 B.R. 397, 401 n. 2 (S.D.N.Y.1986). *But see Rainey v. International Harvester Credit Corp.*, 59 B.R. 987 (N.D.Ill. 1986) (failure to ask bankruptcy judge to make the determination of whether the matter involved a non-core issue results in waiver of the issue on appeal).

Rainey, Northside, and IHCC (the credit corporation), had the superior interest in the trucks. Since IHCC claimed a prior lien on the trucks, the bankruptcy court's determination of the matter fell squarely within its jurisdiction over "core" proceedings as stated in 28 U.S.C. § 157(b)(2)(K).

*Id.* at 989.

 Similarly, in the case at hand, the bankruptcy court was called upon to determine the extent of the debtor's interest in the check. This inquiry necessarily involved determining the relative rights and interests of the other parties. The fact that the court was required to adjudicate the rights of these other parties, however, did not move the proceeding outside the court's jurisdiction. Therefore, the bankruptcy court did not exceed its authority in determining the ownership of the check and the terms of its payment.

### The Evidence

Appellant Rogers disputes findings of fact and conclusions of law by the bankruptcy court on the ground that they were beyond the scope of the evidence and/or against the weight of the evidence presented at the February 4 hearing. Specifically, he disputes the court's finding that Alvin Muller exercised control over the check when he signed a note purporting to grant an attorney's lien on the check, and that by voluntarily holding exclusive possession of the check that the Mullers accepted the check. He maintains that the Mullers' filing of the Tazewell County lawsuit shortly after they received the check controverts the finding that exclusive possession constituted acceptance. He also disputes findings that there was insufficient evidence to show that Glen Rogers owned the check or

any part of the proceeds; and that the Rices have no interest in the check as it was in payment in full for the land.

In addition, Rogers disputes the Court's conclusions that Rogers did not have a lien on the check. While he agrees that a lis pendens notice allegedly filed in connection with the pending state court suit did not create a lien, he claims that the bank's lien is only contingent to the outcome of the state court litigation. Rogers also disputes the bankruptcy court's conclusion that his purported "silent partnership" with Muller was not proved by competent evidence since there was no evidence offered to prove Rogers ever held legal or equitable title to the real estate, or had a superior right to proceeds of the sale over Mullers' creditors.

When a Court reviews a bankruptcy court's decision on appeal, the Court must adopt the bankruptcy court's findings of fact unless they are clearly erroneous. The clearly erroneous rule does not apply to review of the Court's conclusions of law, which are subject to *de novo* review. *In re Ebbler Furniture & Appliances, Inc.,* 804 F.2d 87, 89 (7th Cir.1986).[6]

At the February 4 hearing, a witness for the bank testified to the steps taken by the bank to create a lien on the check.[7] Alvin Muller, called as an adverse witness by the Rices, testified that on May 17, 1977, he had acknowledged receipt of a document from the Rices to exercise an option to purchase Fischer Farm. Muller testified that he had received a quitclaim deed of any interest Rogers had in Fischer Farm from Rogers to the Mullers, dated September 27, 1977. In answers to a 1977 deposition read at the hearing, Muller had also said that he sold the farm to the Rices and

---

**6.** The Court's standard of review of a bankruptcy judge's decisions in core proceedings is also the clearly erroneous standard. *Gaslight Club v. Official Creditors Committee,* 46 B.R. 209, 211 (N.D.Ill.1985).

**7.** The bank officer testified and exhibits were introduced to show that the bank obtained a deficiency judgment in the amount of $231,-642.64 against the Mullers in a foreclosure suit; that the bank obtained a citation to discover assets, and an order upon citation of the supple-

mentary procedure, which created a judicial lien on Alvin Muller's interest in the certified check; that the judgment order was served on the Mullers by a private process server; and that a letter of transmittal was mailed from the bank's attorney to the Sheriff of Peoria County requesting the sheriff to serve a certified copy of the judgment order on the Mullers; and that the sheriff then served the order upon Phyllis Muller.

that Rogers was to get a one-half interest in any proceeds from the property in exchange for the quitclaim deed. At the hearing, Muller testified that he signed a warranty deed for the property dated June 2, 1977, but he testified that title was conveyed for zoning purposes to Rice at Rice's request.

Muller testified that he, Rogers, and Rice had been partners, and that Rogers still had an interest in the property. He said he had received—but not cashed—the check from the Rices, and that he believed the Rices had been paying the mortgage on the farm.

Randall Jacobs, attorney for the Rices in 1979, testified that he received a letter from Muller's attorney on August 14, 1979, seeking payment on behalf of the Mullers for the farm. Jacobs testified that after a meeting between the parties at which no agreement was reached, he recommended that, since the Rices had title, they tender the money owed to the Mullers. Further, Jacobs testified that he recommended the language the Rices inscribed on the check.

Under the clearly erroneous standard of review, we do not believe the bankruptcy court's findings can be disturbed. In *In re The Pearson Bros. Co.*, 787 F.2d 1157 (7th Cir.1986), the Court discussed review under the clearly erroneous standard. Quoting the Supreme Court, the Seventh Circuit outlined the guiding principles:

> "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed ... Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."

*Id.* at 1161–62, *quoting Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 105 S.Ct. 1504, 1512–13, 84 L.Ed.2d 518 (1985) (citations omitted).

█ Applying those guidelines to the record in the present case, we cannot say that the bankruptcy judge was mistaken.

The evidence supports the court's conclusions that the Mullers conveyed the property to the Rices in 1977, and that, as Jacobs testified, the parties subsequently disagreed as to the terms of the sale. Although Muller testified that he simply thought he was signing a note, and that he did not know there was an attorney's lien on the check, the note itself states that it is secured by an attorney's lien which attached to the certified check. The court could reasonably conclude that by holding the check and attempting to grant a lien in its proceeds, the Mullers had accepted it.

There was no evidence offered—other than Muller's testimony—to show that Rogers was a partner or was entitled to proceeds of the check. In addition, Jacobs' testimony supported the Rices' position that the Mullers had agreed to sell the land, and supports the terms inscribed on the check. The fact that the Rices were paying the mortgage on the land also supports the court's finding that the Rices no longer had an interest in the check, but that the check was full payment for the property.

The court's conclusion that there was not sufficient evidence to prove a silent partnership is supported by the record, as mentioned above. The court's conclusion that Rogers did not acquire or perfect a lien on the check also is proper. A lis pendens notice was filed by the Mullers' attorneys when the Tazewell County lawsuit was filed, and was among the documents before the court. While Rogers agrees that the notice did not create a lien, he maintains that the bank's lien is contingent on the determination of Mullers' and Rogers' interests in state court. Muller says the "lien or encumbrance" created by the lis pendens "should logically attach to the certified check ..." but cites no authority for either the idea that the lis pendens creates a lien, or that it attaches to the check. We therefore agree with the bankruptcy court that Rogers failed to perfect or acquire a lien upon the check.[8]

---

8. In finding that Glen Rogers failed to acquire or perfect a lien on the check, the bankruptcy court went on to say that the lis pendens notice failed to create a lien on the check because lis pendens notice only affects title to land, not personal property, under Ill.Rev.Stat. ch. 30,

As outlined above, the record contains facts to support more than one permissible inference from the evidence submitted. The court's findings that the Mullers accepted the check, and that evidence was insufficient to show that Rogers owned any part of the check and its proceeds, or had a superior right to them over other creditors, have ample support in the record. Ergo, the bankruptcy court's findings cannot be overturned on appeal. We are satisfied that the court's conclusions of law should stand as well.

### Due Process

A troublesome issue in this appeal is Rogers' claim that his due process right to a fair trial was violated by the bankruptcy judge's comments and conduct at both the August 20, 1984, hearing on motions and the final February 4, 1985, hearing.

Rogers cites in particular the following dialogue which took place at the motion hearing on August 20:

THE COURT: I know Mr. Rogers. I've had Mr. Rogers in court before, and I don't believe anything he says.

MR. KELLSTEDT (Rogers' attorney): That may be. I think that's a prejudgment that is improper and unnecessary.

THE COURT: It's not a prejudgment. It's based on facts.

Further, he offers remarks made by the bankruptcy judge at the end of the February 4 hearing when the parties and the judge were discussing the type of order that should be entered:

MR. KELLSTEDT: On behalf of Mr. Rogers, who has, as Mr. Muller testified today, an interest in the property and the proceeds in that check since 1976—.

THE COURT: He has no interest anymore because Mr. Radley's client got the money. You are out of order.

MR. KELLSTEDT: We are not out of order. We are a party to this lawsuit.

THE COURT: I am not going to listen to you anymore.

MR. KELLSTEDT: You have not considered the case of the claim of Mr. Rogers at all in this case.

THE COURT: You didn't file a proper response.

MR. KELLSTEDT: I filed them. They are in the court records.

THE COURT: I am not going to argue with you.

MR. KELLSTEDT: I wish to call it to your attention that you never considered fairly and fully Mr. Rogers'—.

THE COURT: I am not going to hear anymore in this case.

Rogers argues that the judge's comments and conduct—which allowed him "no opportunity to argue further or present any proof," [9]—violated his due process rights and was plain error under Fed.R. Civ.P. 61.

Rogers cites *A.C. Newman, Jr. v. A.E. Staley Manufacturing Co.*, 648 F.2d 330, 333–35 (5th Cir.1981), in support of his claim. While that case is useful for the proposition that a reviewing court should consider the record as a whole rather than considering isolated remarks, the case is factually distinguishable from the one at bar in that it involves remarks of a district judge within the hearing of a jury.[10]

 In *Hamm v. Members of the Board of Regents of the State of Florida,* 708 F.2d 647, 651 (11th Cir.1983), the Court discussed general rules that apply to a

---

§ 121. While we agree that Rogers did not acquire a lien by filing a lis pendens notice, we note that Illinois courts have held that the doctrine of lis pendens is not confined to real estate, but also pertains to personal property except negotiable paper. *See Stavros v. Karkomi,* 39 Ill.App.3d 113, 124, 349 N.E.2d 599 (1st Dist.1976).

9. Appellant's brief, p. 9.

10. In *Newman v. A.E. Staley Mfg. Co.,* 648 F.2d 330, 334 (5th Cir.1981), the Court's concern was

that the *jury* could have concluded that the district judge was biased in favor of the plaintiff. The Court said, "A district judge should always bear in mind that the influence of the trial judge on the jury is necessarily and properly of great weight and his lightest word or intimation is received with deference, and may prove controlling." *Id.* at 334, *quoting Quercia v. United States,* 289 U.S. 466, 470, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933).

situation where, as here, the appellant has not invoked either of two federal recusal statutes.[11] Usually, the bias must stem from extrajudicial sources, and must be focused against a particular party, although exceptions will be made where the judge's remarks in a judicial context demonstrate such pervasive bias and prejudice that it constitutes bias against a party. *Id.* at 651 (citations omitted). In *Hamm*, plaintiff based claims of bias and prejudgment on refusals to allow her attorney to respond to defense objections, a statement by the judge that he was not going to hear a lecture about the First Amendment, and interruptions in the plaintiff's case.

There, the Court ruled that while some of the judge's remarks seemed "intemperate and impatient, given the short duration of the proceedings, his actions do not evince pervasive bias. This is not a case in which the judge openly exhibited 'a partisan zeal' for the defendants or 'stepped down from the bench to assume the role of advocate' on the defendants' behalf." *Id.* at 651 (citations omitted).

Reviewing courts also recognize that a federal judge is not a "mere moderator" of proceedings, and has "broad powers to comment on the evidence ... and [to] maintain the pace of the trial by interrupting, or cutting off counsel as a matter of discretion." *Coats & Clark, Inc. v. Gay*, 755 F.2d 1506 (11th Cir.1985), *citing Moore v. U.S.*, 598 F.2d 439 (5th Cir.1979).

■ Unquestionably, the right to a tribunal free from bias or prejudice is an essential element of due process. *U.S. v. Sciuto*, 531 F.2d 842, 845 (7th Cir.1976). It is also well settled that to establish a due process violation, the mere appearance of partiality or circumstances "which might lead one to speculate as to a judge's impartiality" is not enough. Instead, "a litigant

is denied due process if he is *in fact* treated unfairly." *Margoles v. Johns*, 660 F.2d 291, 296 (7th Cir.1981) (emphasis in original).

In *Margoles*, the Court noted that "serious facts" are required to warrant reversal on due process grounds. Quoting a Fifth Circuit discussion of leading cases finding such violations, it said, " 'They involved situations where there was actually some incentive to find one way or the other, i.e., financial considerations [citations omitted] or previous participation by the trying judge in the proceeding at which the contempt occurred [citation omitted].' " *Id.* at 297.

■ Bankruptcy Judge Lipkin's remarks during the motion hearing and his comments to, and treatment of, Mr. Rogers' attorney—and other attorneys—during the final February hearing were indeed regrettable and unworthy of praise. However, we do not think they reach the very high level of bias or notoriety required to constitute plain error or a denial of due process. *Miley v. Delta Marine Drilling Co.*, 473 F.2d 856, 858 (5th Cir.1973). First, we note that Mr. Rogers' attorney took no action after the first hearing to seek recusal of the bankruptcy judge or to otherwise convey his concern about bias before the proceedings went further. At the February hearing, the judge may have gone too far in trying to hurry the proceeding along. The record reflects that after Mr. Jacobs testified, Mr. Church, attorney for the Rices, called Mr. Rice to the stand. The judge questioned Mr. Church about the need for further testimony, and Mr. Church agreed to excuse Rice.

THE COURT: What else is there, gentlemen? I think under the evidence, Mr. Radley has a valid lien on this check. I

---

**11.** 28 U.S.C. § 144 provides for recusal when a party files a timely affidavit and motion alleging that the judge before whom the matter is pending is personally biased or prejudiced against him. § 455 outlines the general rule that a judge disqualify himself in any proceeding where his impartiality might reasonably be questioned, and includes specific instances when he must do so. *Hamm v. Members of the*

*Board of Regents of the State of Florida*, 708 F.2d 647, 651 (11th Cir.1983). These recusal statutes may be invoked against bankruptcy judges. *See In re Lorraine Johnson-Allen*, 68 B.R. 812 (Bankr.E.D.Pa.1987).

In *Hamm*, since the appellant did not proceed under either statute, the Court applied the plain error standard of review.

want Mr. Radley to prepare an order to that effect.

A discussion about the terms of the order, and whether it would include a provision that the check constituted payment in full for the property, followed. After several of the attorneys had spoken, Mr. Kellstedt spoke to commence the dialogue quoted previously in which he sought to present Rogers' interests. However, Kellstedt did not make an offer of proof or otherwise indicate he had testimony or evidence he wished to present. Appellee, in its brief, characterized Mr. Kellstedt's remarks as scolding the bankruptcy judge after he'd made his decision.

Again, although both hearings were conducted in a manner this Court in no way condones, we cannot say that Rogers was denied his due process right to a fair hearing.[12]

For these reasons, the decision of the bankruptcy court is AFFIRMED.

**12.** A similar case under recusal statutes involving a judge's comments during a proceeding is *U.S. v. Antonelli,* 582 F.Supp. 880 (N.D.Ill.1984).