**Edward G. PHILON, Plaintiff,**

v.

**Donald B. RICE, Secretary of the Air Force, Defendant.**

**No. 88–105–3–MAC(DF).**

United States District Court,
M.D. Georgia,
Macon Division.

March 12, 1991.

Melvyn J. Williams, Macon, Ga., for plaintiff.

Frank L. Butler, III, Asst. U.S. Atty., Macon, Ga., Major Dana E. Morris, Trial Atty., HQ USAF/JACL, Washington, D.C., for defendant.

FITZPATRICK, District Judge.

This case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, was tried before the court without a jury on February 25–27, 1991. The court is now prepared to issue its findings of fact and conclusions of law.

## FINDINGS OF FACT

The plaintiff, Edward G. Philon, is a black male employed in the fire department at Robins Air Force Base, Warner Robins, Georgia, with a civil service ranking of GS–09. He has been employed in this branch since 1977. The plaintiff was promoted to his present grade after filing an administrative complaint of racial discrimination at the hands of Fire Chief Herbert Miller. The plaintiff later filed similar claims, but investigations revealed no grounds for them.

In July, 1984, a new Base Civil Engineer, Colonel Thomas E. Lollis, a white male, arrived at the Base. The fire department fell under his jurisdiction. When Chief Miller retired on January 2, 1985, the job of fire chief became open. Due to perceived morale problems at the Base, Colonel Lollis and Deputy Base Civil Engineer Mr. Jerry A. Friesen, also a white male, decided to expand the search for candidates to fill this position worldwide. Nonetheless, they changed the fire chief's position from a ranking of GS–12 to GS–11/12 to allow on-base candidates with GS–09 grades, such as the plaintiff, to apply.

Colonel Lollis had observed the plaintiff's work and examined his record. At one point the plaintiff was disciplined for failing to report to a fire. The plaintiff had served a temporary duty as a deputy fire chief, but never as fire chief. During the latter half of 1984, the plaintiff served as Assistant Chief for Training. An independent branch of the Air Force conducted a management effectiveness inspection (MEI) in January, 1985, and criticized the fire department at the base and the training program and the plaintiff in particular. Colonel Lollis had also seen the plaintiff manage a field exercise and did not think well of his performance.

At the start of the selection process, Colonel Lollis called John D. Carroll, a white male, in Texas to inform him that the position was open. He stated that Carroll's application would be welcome but gave no hint or promise of preferential treatment. Colonel Lollis knew Mr. Carroll because they had worked together previously in Germany, where Colonel Lollis was a base

civil engineer and Mr. Carroll was a fire chief. Mr. Carroll had, at the time of trial, twenty-seven years' experience as a fire fighter, twenty of them on active duty with the Air Force, where he worked his way up through the ranks. Prior to the selection process, he acquired over six years' experience as either a fire chief or deputy fire chief. He also served as an instructor at an Air Force fire fighting school and had a spotless record.

There were a total of twenty-seven qualified candidates for the position, including the plaintiff. Mr. Friesen ranked each of these using a subjective numerical system which he devised himself. The plaintiff received extra points due to his minority status, but was still ranked in the bottom third of all candidates. None of the top four candidates were from Robins Air Force Base. Mr. Friesen gave a list of all of the candidates to Colonel Lollis for consideration, but highlighted the top four. Colonel Lollis selected Mr. Carroll, the top candidate, to fill the position on February 5, 1985.

Plaintiff filed a formal complaint on April 10, 1985, alleging racial discrimination in the selection process for the fire chief's position and that he had suffered reprisals for filing his previous complaints. Plaintiff followed administrative procedures and after an Air Force investigator recommended a finding of no discrimination, plaintiff requested a hearing before an administrative judge from the Equal Employment Opportunity Commission (EEOC), which was held on January 30, 1987. The administrative judge issued a recommended finding of no discrimination, which was adopted by the Air Force in its final decision dated September 1, 1987. The EEOC's Office of Review and Appeals affirmed this decision on March 11, 1988. The plaintiff then filed this suit.

### CONCLUSIONS OF LAW

The Supreme Court laid out the general plan of a Title VII disparate treatment case in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff must first establish a prima facie case of discrimination, after which the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. The plaintiff must then be given an opportunity to show that the defendant's reasons were pretextual. *Id.* at 802–04, 93 S.Ct. at 1824–25. The defendant's burden is one of production, not persuasion, and the ultimate burden remains with the plaintiff. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981).

In order to establish his prima facie case, the plaintiff must show (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of the complainant's qualifications. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. The plaintiff has established the first three elements, but not the fourth. The plaintiff was not one of the four highest ranked applicants. The Air Force selected one of those four, and so did not reject the plaintiff and then continue to seek additional applicants from persons of his qualifications. *See, Malloy v. Lee County*, 694 F.Supp. 851 (M.D.Fla.1988), *aff'd*, 876 F.2d 899 (11th Cir.1989).

Regarding the reprisal claim, to establish a prima facie case the plaintiff must show (i) that he engaged in actions protected by Title VII; (ii) that an adverse employment action was taken; and (iii) that a causal link existed between the first two elements. *Hamm v. Members of the Board of Regents*, 708 F.2d 647, 654 (11th Cir.1983). The first two elements have been established, but there has been no evidence, direct or indirect, of a connection between the plaintiff's prior complaints and his non-selection as fire chief. The fact that Colonel Lollis was never involved in those complaints, although he had some knowledge of them, makes the existence of such a connection even less likely.

Moreover, and perhaps more obviously, even if the plaintiff could be considered to

have shown a prima facie case of discrimination or reprisal, the defendant has articulated legitimate, non-discriminatory reasons for not having hired him. Although the plaintiff has attacked his disciplinary action and the MEI, it is nonetheless clear that Mr. Carroll was simply better qualified than the plaintiff for the job of fire chief. Mr. Carroll had not only more, but more pertinent, experience, and had a clean record. The defendant's selection of Mr. Carroll over the plaintiff was justified on this basis alone, even if it had not been based on Mr. Friesen's ranking system.

Turning to the last part of the analysis, there has been no evidence that any of the defendant's reasons for not hiring the plaintiff were pretextual. The main thrust of the plaintiff's claim seems to be that Mr. Carroll was "preselected" for the fire chief's job. While it is true that Colonel Lollis specifically asked Mr. Carroll to apply for the position, there is no reason to believe that he was guaranteed he would get the job. Moreover, preselection is not barred by Title VII when it is based on the qualifications of the successful applicant and not on a forbidden factor. *See, Goostree v. Tennessee,* 796 F.2d 854, 861–62 (6th Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1374, 94 L.Ed.2d 689 (1987). To hold otherwise would unjustifiably expand the scope of Title VII beyond the factors it was designed to remove from employment decisions.

The court can only conclude that the plaintiff has failed to prove a case of discrimination or reprisal. The whole theory of Title VII was to protect minorities from discrimination on the job. The statute was never and is not now a weapon for a disgruntled job seeker who happens to be a member of a minority to gain preference because of his race. The court believes in the principle of fair dealing, free of any semblance of racial discrimination. The court also realizes that racial discrimination is often a very subtle thing, and that it must listen to the defendant's evidence with a suspicious ear. The court does not, however, have to ignore common sense and logic when the evidence clearly shows that the defendant was simply trying to get the best person for the extremely important position of fire chief of a major Air Force base.

All through the trial, the plaintiff chose to portray Chief Miller as the root cause of his troubles. A substantial portion of the plaintiff's questions to witnesses and arguments to the court concerned alleged racial hostility shown by Miller. This evidence was not rebutted by the defendant and the court can agree with the plaintiff that Miller's actions, taken as the plaintiff alleges, would fairly easily fall into the realm of discrimination prohibited by Title VII. The obvious problem with this line of thought is that there is absolutely no evidence that Miller had anything to do with the plaintiff's non-selection for the job of fire chief, despite the plaintiff's incredulous attempts to show that Mr. Friesen was the center of a plot against him that stretched over several years and so provided the necessary link between any discriminatory action by Miller and the plaintiff's non-selection. Simply put, Miller was in no way connected to the subject matter of this suit. The plaintiff beat this horse so long and so hard that it died on the first day of trial, but he never let up.

Rather than chastise Colonel Lollis and Mr. Friesen for searching worldwide for Miller's replacement, the court must commend their attempt to get the best possible candidate for the job. In the event of a disaster, always a possibility on a major military installation, the fire chief becomes arguably the most important person on the base. Lives can depend on his ability to perform his duties. This Judge observed Chief Carroll while testifying and was very favorably impressed with his obvious competence and high level of professionalism. The plaintiff did not make the same impression when he took the stand.

The subjective criteria used by Mr. Friesen contain absolutely no hint of racial prejudice. Mr. Friesen is a highly experienced and thoroughly professional civil servant. The court was also strongly impressed with his demeanor.

In sum, the plaintiff has not made his case. Judgment shall be entered for the defendant.

SO ORDERED.