[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-15038
Non-Argument Calendar
_____

D.C. Docket No. 4:18-cv-00901-JHE

JARRETT LAMAR KIRBY,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION,
COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(July 9, 2020)

Before JORDAN, NEWSOM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Claimant Jarrett Lamar Kirby appeals the district court's order affirming the decision of the administrative law judge ("ALJ"), which denied his application for disability benefits. On appeal, Claimant challenges the ALJ's finding that he was capable of performing some work, notwithstanding his mental impairments. Claimant also argues that the ALJ failed to act as an impartial decisionmaker. Because substantial evidence supported the ALJ's decision and Claimant has not established bias, we affirm.

## I.    BACKGROUND

Claimant, a 59-year-old former forklift operator, applied for disability insurance benefits in April 2015, claiming a disability onset date of March 23, 2015. He alleged that he was unable to work due to panic attacks, diabetes, high blood pressure, and high cholesterol. The agency initially denied his claim, and Claimant requested a hearing before an ALJ.

After stating at the hearing that he had reviewed Claimant's medical and nonmedical records, the ALJ invited testimony from Claimant and a vocational expert. Claimant testified that anxiety and depression kept him from working, that he had panic attacks in crowded places and when driving, and that he was nervous about leaving his house, even though Prozac had helped calm him down. Posing a

2

hypothetical to the vocational expert, the ALJ asked her whether there were any jobs for an individual of advanced age with limited education who could perform only medium-exertion work that involved no driving, no unrestricted heights, no foot control operation, and no climbing, who could have only occasional contact with the general public, and who could perform only simple, repetitive, noncomplex tasks.  The vocational expert responded that such an individual could not perform Claimant's past work as a forklift operator, but could perform such medium, unskilled jobs as cook helper, self-service laundry attendant, and team assembler.  In addition, the vocational expert said that this hypothetical person could perform such unskilled, light jobs as cafeteria attendant, storage facility rental clerk, and assembly machine tender.

After considering the evidence, the ALJ applied the five-step sequential analysis required to determine whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520(a)(1), (4).  If an ALJ can determine whether a claimant is disabled or not disabled at a given step, he will make that determination.  *Id.* § 404.1520(a)(4). Otherwise, he will proceed to the next step.  *Id.*  At step one, the ALJ considers the claimant's work activity.  *Id.* § 404.1520(a)(4)(i), (b).  If the claimant is engaged in substantial gainful activity, the ALJ will find the claimant not disabled; otherwise, the ALJ proceeds to the next step.  *Id.*  At step two, the ALJ considers the severity of the claimant's impairments.  *Id.* § 404.1520(a)(4)(ii), (c).  If the claimant does

not have any severe impairments, the ALJ will find the claimant not disabled; otherwise, the ALJ must move to the next step of the process. *Id.* At step three, the ALJ further considers the severity of the claimant's impairments, assessing whether they meet or equal a listed impairment. *Id.* § 404.1520(a)(4)(iii), (d). If they meet or equal a listed impairment, the ALJ finds the claimant disabled. *Id.* If not, the ALJ proceeds to determine the claimant's residual functional capacity, which is used to evaluate whether the claimant has a disability at steps four and five. *Id.* § 404.1520(a)(4), (e). A claimant's "residual functional capacity" is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) (quotation marks omitted). At step four, the ALJ will determine whether the claimant can perform his past relevant work, given his residual functional capacity. 20 C.F.R. § 404.1520(a)(4)(iv), (f). If a claimant can perform his past relevant work, the ALJ will determine that he is not disabled; otherwise, the ALJ proceeds to the final step. *Id.* At step five of the sequential evaluation process, the ALJ will determine whether the claimant can adjust to other work, given the claimant's residual functional capacity, age, education, and work experience. *Id.* § 404.1520(a)(4)(v), (g)(1). A claimant who cannot adjust to other work is disabled, whereas a claimant who can make an adjustment to other work is not disabled. *Id.*

4

After applying this five-step sequential analysis, the ALJ found that Claimant did not have a disability from March 25, 2015 through the date of his decision, July 5, 2017.  At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since March 23, 2015.  At step two, the ALJ found that Claimant had the severe impairments of diabetes mellitus, hypertension, obesity, anxiety disorder, depressive disorder, panic disorder, and borderline intellectual functioning.  At step three, the ALJ concluded that these impairments did not meet or medically equal the severity of a listed impairment.  At step four, the ALJ concluded that, notwithstanding his impairments, Claimant had the residual functional capacity to perform medium-exertion work, except that he could not do work involving driving, unrestricted heights, foot control operations, or climbing, that he could have only occasional contact with the general public, and that he could perform only simple, repetitive, noncomplex tasks.  In reaching this conclusion, the ALJ rejected, as inconsistent with the medical evidence, Claimant's allegation that his mental impairments were totally disabling.  Yet, the ALJ acknowledged that these limitations meant Claimant could not perform his past relevant work.  Finally, at step five, the ALJ found that Claimant's limitations meant that he would be unable to perform all of the requirements associated with medium-work duties.  Accordingly, the ALJ looked to the vocational expert's

5

testimony, rather than the Medical Vocational Guidelines,[1] to determine whether

Claimant could perform other work existing in significant numbers in the national

economy. Finding that Claimant could do so, the ALJ denied his application for

disability benefits.

The Appeals Council denied Claimant's request for review. Claimant then

sought judicial review and consented to the jurisdiction of a magistrate judge, who

affirmed the ALJ's decision. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

When, as here, "the ALJ denies benefits and the Appeals Council denies

review, we review the ALJ's decision as the Commissioner's final decision."

*Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (alteration

accepted) (quotation marks omitted). We review the legal principles underlying an

ALJ's decision *de novo* but are limited to reviewing the resulting decision for

substantial evidence. *Id.* at 1266–67. Under the substantial evidence standard, we

must affirm if the record contains relevant evidence that a reasonable person would

---

[1] The Medical Vocational Guidelines sometimes "yield a statutorily-required finding of 'Disabled' or 'Not Disabled'" based on a claimant's characteristics, such as his age, education, work experience, and ability to perform work at a given exertion level. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). However, in determining whether a claimant can adjust to other work, an ALJ cannot exclusively rely on the Medical Vocational Guidelines if a claimant cannot "perform a full range of work at a given residual functional level" or "has non-exertional impairments that significantly limit basic work skills." *Id.* at 1242 (quotation marks omitted). If such limitations exist, an ALJ must consult a vocational expert. *Id.*

accept as adequate to support the ALJ's conclusion, even if the evidence preponderates against the ALJ's findings. *Id.* at 1267. We will not "decide the facts anew, make credibility determinations, or re-weigh the evidence." *Id.* (alterations accepted) (quotation marks omitted).

"An individual claiming Social Security disability benefits must prove that [he] is disabled." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). As noted above, to determine whether a claimant is disabled, an ALJ uses a five-step, sequential evaluation process. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The ALJ will assess whether (1) "the claimant is currently engaged in substantial gainful activity," (2) "the claimant has a severe impairment or combination of impairments," (3) "the impairment meets or equals the severity of the specified impairments in the Listing of Impairments," (4) "the claimant can perform any of his or her past relevant work despite the impairment" given his residual functional capacity ("RFC"), and (5) "there are significant numbers of jobs in the national

7

economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Id.*

### B.    Whether Substantial Evidence Supported the ALJ's Finding that Claimant's Mental Impairments Did Not Prevent Him from Performing Any Work

In determining Claimant's RFC, the ALJ factored in limitations produced by Claimant's mental impairments, including his anxiety, depression, panic disorder, and borderline intellectual functioning.  Specifically, the ALJ found that Claimant's mental impairments limited his ability to do medium-exertion work, preventing him from driving or having more than occasional contact with the general public, and restricting him to simple, repetitive, and noncomplex tasks.[2] However, the ALJ rejected Claimant's allegation that his mental impairments imposed any further limitations on his RFC.  In reaching this conclusion, the ALJ considered the record as a whole and gave little weight to certain opinions of Dr. James Barnett (Claimant's treating psychiatrist) and Giselle Sharp (a licensed clinical social worker), some weight to an evaluation by Dr. David Wilson (a

---

[2]  The ALJ did not specify which limitations were attributable to each of Claimant's severe impairments.  However, a reasonable interpretation of the ALJ's decision indicates that these limitations were based on Claimant's mental impairments rather than his physical impairments. Indeed, Claimant's chief explanation for why he could not work was that he had anxiety about driving and contact with people, and the restriction to simple tasks could only be attributable to his mental-function assessments.  For our purposes, we need not determine whether other limitations, such as those related to heights and climbing, were included based on Claimant's mental or physical impairments.

psychologist), and greater weight to an evaluation by Dr. Robert Estock (a state agency psychological consultant).

On appeal, Claimant asserts that the ALJ failed to provide good cause for the weight assigned to those opinions. While not entirely clear from his briefing, Claimant appears to contend that the ALJ would have arrived at a different determination of his RFC if the ALJ had weighed the medical opinions differently. Based on the evidence he cites, Plaintiff seemingly contends that his mental impairments limited his RFC beyond those limitations imposed by the ALJ, although he has not clarified what additional limitations the ALJ should have included in the RFC determination. Because Claimant does not challenge the reasons the ALJ provided for assigning specific weight to each of the various medical opinions, however, he has abandoned any argument that the ALJ's findings were inaccurate. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."). In any event, we discern no error.

In determining what weight to give a medical opinion, an ALJ considers several factors, including the examining relationship, the treatment relationship, any relevant evidence or explanation presented in support of the opinion, and the

9

consistency of the opinion with the record as a whole.  20 C.F.R. § 404.1527(c).

"[T]he ALJ must state with particularity the weight given to different medical

opinions and the reasons therefor."  *Winschel*, 631 F.3d at 1179.  Further, the ALJ

must give a treating physician's opinion "substantial or considerable weight"

absent "good cause."  *Id.* (quotation marks omitted).  Good cause exists if the

evidence does not bolster the opinion, the evidence supports a contrary finding, or

the opinion is conclusory or inconsistent with the doctor's own medical records.

*Id.*  "We will not second guess the ALJ about the weight the treating physician's

opinion deserves so long as he articulates a specific justification for it."  *Hunter v.

Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

Here, in assigning weight to each medical opinion, the ALJ made specific

findings supported by substantial evidence.  First, the ALJ articulated good cause

for affording little weight to psychiatrist Dr. Barnett's June 2015 and October 2015

opinions that Claimant could not return to work due to disabling mental

limitations.  Dr. Barnett treated Claimant for anxiety and depression between

February 2015 and April 2015.  During that period, Dr. Barnett repeatedly noted

that Claimant was oriented in person, place, and time, and that he had normal

insight, judgment, thought process, and memory.  Although Dr. Barnett

recommended in late March 2015 that Claimant be put on short-term disability due

to his fear of driving, the doctor wrote a letter in April 2015 that cleared Claimant

to return to work in a few months.  The record does not reflect that Dr. Barnett saw Claimant again after April 2015.  Nevertheless, in June 2015 Dr. Barnett signed a letter stating that Claimant was disabled and unable to work.  Then, in October 2015, Dr. Barnett completed a mental health source statement indicating that, although Claimant could maintain socially appropriate behavior and understand, remember, and carry out simple instructions, he was unable to maintain attention, concentration, and pace for a two-hour period, he could not perform activities within a schedule and maintain regular attendance, and he would miss every workday in a 30-day period due to his psychological symptoms.  Dr. Barnett indicated that these limitations had existed back to March 2015.

Considering this evidence, the ALJ reasonably afforded little weight to Dr. Barnett's June 2015 and October 2015 opinions.  As the ALJ noted, those opinions were inconsistent with Dr. Barnett's earlier records, which reflected normal mental status examinations and an assessment that Claimant could return to work. Further, there was no evidentiary basis for a change in opinion because the record did not show that Dr. Barnett saw Claimant after April 2015.  Thus, substantial evidence supported the ALJ's assessment of Dr. Barnett's opinions.

Substantial evidence also supported the ALJ's decision to afford little weight to Sharp's opinions and only some weight to Dr. Wilson's opinions.  Sharp, the clinical social worker, provided letters and mental health source statements in

11

September 2016, March 2017, and April 2017, which indicated that Claimant was being treated for generalized anxiety disorder, that he had been prescribed medications with potential side effects, and that, based on her observation and assessment of Claimant during several months of treatment, he could not carry out daily work activities. Dr. Wilson, the psychologist, conducted a single consultation with Claimant in May 2017 and, from that, concluded that he had major depressive disorder, panic disorder, agoraphobia, and borderline intellectual functioning. Dr. Wilson further concluded that Claimant would be unable to work due to Claimant's limited mental control, attention, and memory.

The ALJ reasonably concluded that the opinions of Sharp and Dr. Wilson were inconsistent with other medical records, including Claimant's hospitalization record from April 2017, which noted that he did not display depression, anxiety, or mania, and had normal mood, affect, and cognition. The ALJ also reasonably discounted Sharp's opinions because the treatment records on which she purportedly based her opinion were not offered in evidence. Further, Dr. Wilson's opinion was due less weight because, as the ALJ noted, the record as a whole did not suggest that Claimant had significant, long-term problems with mental control, attention, or memory.

Finally, substantial evidence supported the ALJ's decision to give greater weight to Dr. Estock's May 2015 opinion that Claimant was not disabled. Dr.

12

Estock, the state psychological consultant, concluded that Claimant could understand, carry out, and remember simple instructions, attend and concentrate on simple tasks for two-hour periods, interact with the public on a casual basis, and respond to changes that were introduced gradually. As the ALJ noted, this opinion was consistent with Claimant's medical records from the pertinent time period, including the records of Claimant's treating psychiatrist.

Because substantial evidence supported the ALJ's stated reasons for assigning specific weights to each medical opinion, we discern no reason to overturn the ALJ's finding that Claimant's mental impairments did not render him incapable of performing any work. Claimant offers no other challenge to the ALJ's RFC determination. Accordingly, we turn to the final step of the sequential analysis. That step requires a determination whether Claimant could "adjust to other work," given his age, education, and work experience, as well as the fact that his RFC limited him to performing medium-exertion work involving only simple, repetitive, noncomplex tasks, no driving, no unrestricted heights, no foot control operations, no climbing, and no more than occasional contact with the general public.

### C.    Whether Substantial Evidence Supported the ALJ's Finding that Claimant Could Adjust to Other Work in the National Economy

On appeal, Claimant challenges the ALJ's finding that he could adjust to other work existing in significant numbers in the national economy. He argues

that, because his RFC did not permit him to perform a full range of medium-exertion work, the ALJ should have applied the Medical Vocational Guidelines (the "grids") applicable to individuals who could perform only a full range of sedentary or light work. Specifically, he argues that the ALJ should have applied grid rules 201.02 and 202.02, which direct a disability finding for individuals limited to sedentary or light work who share Claimant's age, education, and previous work experience. We find Claimant's argument unpersuasive.

At the final step of the sequential analysis, the ALJ must determine "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178. To make this determination, the ALJ may either use the grids or rely on a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239–40 (11th Cir. 2004). However, an ALJ may not exclusively rely on the grids when a claimant "is unable to perform a full range of work at a given residual functional level" or "has non-exertional impairments that significantly limit basic work skills." *Id.* at 1242 (quotation marks omitted). When such limitations exist, and ALJ must consult a vocational expert to determine whether the claimant can adjust to other work. *Id.*

Here, substantial evidence supported the ALJ's finding that Claimant could adjust to other work existing in significant numbers in the national economy.

14

Claimant's argument that grid rules 201.02 and 202.02 directed a disability finding is misguided. Because the ALJ found that Claimant could perform medium exertion work, grid rules 201.02 and 202.02, which concern individuals who are limited to sedentary or light work, did not apply. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, table nos. 1 & 2, §§ 201.02, 202.02. Instead, the ALJ properly consulted the grid rules for individuals who could perform medium work and who shared Claimant's age, education, and previous work experience. Those grid rules did not direct a disability finding. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, table no. 3, §§ 203.04, 203.12. In any event, the ALJ properly consulted a vocational expert rather than relying exclusively on the grids, given that Claimant had additional postural, environmental, and mental limitations that impeded his ability to perform substantially all of the requirements of medium-exertion work. *Phillips*, 357 F.3d at 1242.

The vocational expert's testimony provided substantial evidence for the ALJ's determination that Claimant was not disabled. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007). Here, the ALJ asked the vocational expert whether a hypothetical individual with Claimant's RFC, age, education, and work experience could adjust to any work existing in

15

significant numbers in the national economy.  The vocational expert responded in the affirmative, testifying that such a person could perform the jobs of cook helper, self-service laundry attendant, team assembler, cafeteria attendant, storage facility rental clerk, and assembly machine tender.  Accordingly, substantial evidence supported the ALJ's finding that Claimant could adjust to other work in the national economy.

### D.    Whether the ALJ Was Biased Against Claimant

Finally, Claimant argues that bias "tainted" the ALJ's decision.  We must presume that administrative law judges are unbiased.  *See Schweiker v. McClure*, 456 U.S. 188, 195 (1982).  Rebutting this presumption requires a claimant to show a "conflict of interest or some other specific reason for disqualification."  *Id.* at 195–96.  "[B]ias sufficient to disqualify a judge must stem from extrajudicial sources and must be focused against a party to the proceeding" unless "a judge's remarks in a judicial context demonstrate such pervasive bias and prejudice that it constitutes bias against a party."  *Hamm v. Members of Bd. of Regents of State of Fla.*, 708 F.2d 647, 651 (11th Cir. 1983) (citations omitted); *see United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) ("The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.").

16

Here, Claimant has not carried his burden to establish bias on the part of the ALJ. While Claimant contends that the ALJ's rulings have often been challenged and reversed, he has not identified comments by the ALJ in these proceedings or any other evidence suggesting that the ALJ prejudged his case. The ALJ analyzed the evidence, explained his decision in terms of what the record showed, and, as discussed above, reached a disposition supported by substantial evidence. *See Hamm*, 708 F.2d at 651 ("Neither a trial judge's comments on lack of evidence, rulings adverse to a party, nor friction between the court and counsel constitute pervasive bias."). In short, because the ALJ's decision does not suggest that the ALJ was biased and Claimant has not identified any extrajudicial source of bias against him, Claimant has not rebutted the presumption that the ALJ impartially judged his case.[3]

---

[3] Claimant has recently moved to remand the case to the Commissioner to reconsider the denial of benefits based on a May 29, 2020 decision from Social Security Administration, which, according to Claimant, found that he had a disability onset date of July 6, 2017. A remand under sentence six of 42 U.S.C. § 405(g) "is available when evidence not presented to the Commissioner at any stage of the administrative process requires further review." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1267 (11th Cir. 2007); 42 U.S.C. § 405(g) (providing that a court may remand a case to the Commissioner "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"). Here, a remand is unwarranted. Claimant has not submitted a copy of the purportedly favorable subsequent decision. *See* Fed. R. App. P. 27(a)(2)(B)(i) ("Any affidavit or other paper necessary to support a motion must be served and filed with the motion."). Even assuming that Claimant has accurately described the May 2020 decision, however, it is unclear why a finding that Claimant had a disability onset date of July 6, 2017 would cause the Commissioner to reconsider the decision here, which found that Claimant had not established a disability before July 5, 2017. In any event, we have held that a subsequent favorable decision by an ALJ does not warrant a sentence-six remand. *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) (holding that "a later favorable decision is

## III.    CONCLUSION

Because substantial evidence supported the ALJ's finding that Claimant was not disabled and Claimant has not proven that bias affected the ALJ's determination, we **AFFIRM** the district court's order affirming the ALJ's denial of disability benefits.  Claimant's pending "Motion to Remand" is **DENIED**.

---

not evidence for § 405(g) purposes").